IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Case No. 23-cv-00709-PAB-SBP

ELIZABETH SCHACHT, M.D.,

    Plaintiff,

v.

DENIS R. MCDONOUGH, Secretary, U.S. Department of Veterans Affairs,

    Defendant.
_____

**ORDER**
_____

This matter is before the Court on Defendant's Motion to Dismiss Amended Complaint [Docket No. 37].  Plaintiff Elizabeth Schacht ("Dr. Schacht") filed a response. Docket No. 54.  Defendant Denis R. McDonough, sued in his official capacity as the Secretary of the United States Department of Veteran Affairs ("VA"), filed a reply. Docket No. 59.  The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

I.      **BACKGROUND**[1]

Dr. Schacht was employed by the VA as an anesthesiologist at the VA's Eastern Colorado Health Care System ("ECHCS") in Colorado from March 2015 until August 20, 2018.  Docket No. 29 at 2-3, 6, ¶¶ 6-7, 12, 26.  Dr. Schacht has been licensed to practice medicine since 2010 and is triple board certified in anesthesiology, critical care medicine, and advanced perioperative transesophageal echocardiography.  *Id.* at 5-6,

_____

[1] The facts below are taken from plaintiff's amended complaint, Docket No. 29, and are presumed to be true for purposes of ruling on defendant's motion to dismiss. *See Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011).

¶ 25.  Dr. Schacht is female and is originally from Colombia.  *Id*. at 3, ¶¶ 10-11.  Dr. Schacht was the only female anesthesiologist at ECHCS during her employment from May 2015 until August 2018.  *Id*. at 6, ¶ 27.  Dr. Schacht's supervisors at ECHCS included the Chief of Anesthesiology, Dr. Ian Black; the Medical Center Director, Sallie Houser-Hanfelder; and the Chief of Staff, Dr. Ellen Mangione.  *Id*. at 3, ¶ 13.  The VA and plaintiff's supervisors were aware of Dr. Schacht's sex because it was observable and a matter of agency record.  *Id*., ¶ 14.  The VA and plaintiff's supervisors were aware of Dr. Schacht's national origin because she openly disclosed this information and it was a matter of agency record.  *Id*., ¶ 15.

In the summer of 2017, the VA initiated an investigation into the Anesthesiology Department based on allegations of a hostile work environment.  *Id*. at 8, ¶ 40.  During that investigation, Dr. Schacht raised concerns regarding discrimination based on sex and national origin.  *Id*. at 8-9, ¶¶ 40, 44.  In October 2017, VA officials solicited negative comments about Dr. Schacht from the residents in the ECHCS resident training program after Dr. Schacht reported her concerns about sex and national origin discrimination.  *Id*. at 9, ¶¶ 44-45.  The solicitation yielded four anonymous, vague complaints.  *Id*., ¶ 45.  In contrast, on the official online platform, residents rated Dr. Schacht as "exceeding expectations" in most categories.  *Id*., ¶ 46.  Dr. Black solicited complaints about Dr. Schacht from his subordinates and "gave those employees a financial incentive to file complaints against Dr. Schacht by offering to pay them overtime if they stayed late to file those complaints."  *Id*. at 14, ¶ 76.  In the Fall of 2017, the VA selected Dr. Schacht's cases for review by anesthesiologists at another VA

facility.  *Id*. at 10, ¶ 49.  However, the outside reviewers concluded that Dr. Schacht met the standard of care for all the cases.  *Id*., ¶ 50.

On December 17, 2017, Dr. Carlton Barnett, a male co-worker, "snapped at Dr. Schacht;" made "threatening remarks that he was going to report her and make sure she lost her medical license for making clinical recommendations about 'his patient;'" and wrote "negative and unprofessional remarks" about Dr. Schacht in the patient's chart.  *Id*., ¶¶ 51, 54.  Dr. Schacht reported this incident to Dr. Black and Dr. Mangione. *Id*. at 11, ¶ 55.

On January 11, 2018, Dr. Schacht disclosed to Dr. Black and an HR specialist, Alix Gard, that Dr. Schacht was experiencing a high-risk pregnancy, and she submitted a note from her doctor requesting several accommodations.  *Id*. at 11-12, ¶ 60.  Dr. Schacht's doctor stated that Dr. Schacht's pregnancy-related disability was "placenta previa/placenta abruption" and that the condition began in January 2018 and was expected to last until her delivery on or about May 2, 2018.  *Id*. at 12, ¶ 61.  Dr. Schacht's doctor requested that the VA provide the following accommodations for Dr. Schacht: (1) not lifting or pushing heavy objects; (2) work hours limited to eight to ten hours per day; and (3) limit exposure to radiation.  *Id*., ¶¶ 61-64.  Dr. Schacht was able to perform her job duties with these accommodations.  *Id*., ¶ 65.  Dr. Schacht's supervisors, including Director Houser-Hanfelder, Dr. Mangione, and Dr. Black, were aware of her pregnancy and her need for accommodations.  *Id*. at 3-4, ¶¶ 13, 18.

On December 27, 2017, Dr. Schacht contacted the VA's Equal Employment Opportunity ("EEO") Counselor to report discrimination and initiate a complaint.  *Id*. at 11, ¶ 59.  In mid-January 2018, based on anonymous "resident complaints," the VA

prohibited Dr. Schacht from supervising residents.  *Id*. at 13, ¶ 68.  On January 26,

2018, the EEO Counselor informed Director Houser-Hanfelder that Dr. Schacht was

filing a complaint.  *Id*. at 37-38, ¶¶ 170, 172.  On February 14, 2018, Dr. Schacht filed

her formal discrimination complaint with the VA (the "2018 EEO Complaint").  *Id*. at 13,

¶ 71.  On February 14, 2018, the VA suspended Dr. Schacht's clinical privileges and

removed her from all clinical duties because she allegedly posed "an imminent threat to

patient safety."  *Id*.

 In March 2018, Dr. Schacht was admitted to the hospital due to pregnancy-

related complications.  *Id*. at 15, ¶ 81.  On March 15, 2018, Dr. Schacht requested leave

under the Family and Medical Leave Act ("FMLA").  *Id*.  Dr. Schacht also requested that

the VA stay its investigation into her suspension while Dr. Schacht was on FMLA leave

because she was confined to bed rest.  *Id*.  The VA approved Dr. Schacht's FMLA leave

request, but denied her request to stay the investigation.  *Id*., ¶ 82.  Dr. Schacht could

not remain on bed rest because she had to travel to the hospital several times to submit

supporting documentation for the investigation.  *Id*.  Dr. Schacht's FMLA leave ended on

July 10, 2018.  *Id*. at 39, ¶ 177.

 On July 19, 2018, Dr. Schacht amended her 2018 EEO Complaint to add

additional incidents of discrimination.  *Id*. at 5, ¶ 22.  On August 1, 2018, the VA issued

a notice to Dr. Schacht informing her that the VA proposed to remove her from federal

service and revoke her clinical privileges based on a charge of "unprofessional

conduct."  *Id*. at 15-16, ¶ 84.  On August 20, 2018, Director Houser-Hanfelder issued a

decision removing Dr. Schacht from federal service and revoking her clinical privileges.

*Id*. at 16, ¶ 88.  The VA accused Dr. Schacht of "failing to meet generally accepted

standards of clinical practice and causing concern for the safety of patients." *Id.* at 17-18, ¶ 96. However, none of Dr. Schacht's patients at ECHCS have ever experienced an adverse outcome. *Id.*

Other physicians at ECHCS received less severe or no disciplinary action after the physicians provided substandard care or engaged in misconduct. *Id.* at 18, ¶ 97. For example, Dr. Douglas Semian, a male physician of U.S. origin, failed to evaluate a patient experiencing life-threatening hypoxia; ignored phone calls from the nursing staff; got into an altercation with another staff member; failed to comply with patient safety policies; and provided substandard care to multiple patients, resulting in numerous complaints being filed against Dr. Semian at ECHCS. *Id.* at 18-21, ¶¶ 98, 101-104, 107-109, 112. Dr. Semian and Dr. Schacht reported to the same supervisor, the Chief of Anesthesiology, and were subject to the same standards of performance and evaluation. *Id.* at 18-19, ¶¶ 98-99. The VA disciplined Dr. Semian by suspending him for three days, yet the VA never revoked Dr. Semian's clinical privileges or removed him from federal service. *Id.* at 20, 22, ¶¶ 105-107, 115.

Dr. Schacht asserts four claims in her amended complaint: (1) a disparate treatment claim and hostile work environment claim under Title VII of the Civil Rights Act of 1964 ("Title VII") for discrimination based on sex, pregnancy, and national origin; (2) a retaliation claim under Title VII; (3) a disability discrimination claim under the Americans with Disabilities Act ("ADA") and the Rehabilitation Act; and (4) a retaliation claim under the ADA and the Rehabilitation Act. *Id.* at 36-41, ¶¶ 161-186.

On August 15, 2023, defendant filed a motion to dismiss all of Dr. Schacht's claims pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim. Docket No. 37.

## II.    LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must allege enough factual matter that, taken as true, makes the plaintiff's "claim to relief . . . plausible on its face." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The 'plausibility' standard requires that relief must plausibly follow from the facts alleged, not that the facts themselves be plausible." *RE/MAX, LLC v. Quicken Loans Inc.*, 295 F. Supp. 3d 1163, 1168 (D. Colo. 2018) (citing *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008)). Generally, "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Twombly*, 550 U.S. at 555) (alterations omitted). A court, however, does not need to accept conclusory allegations. *See, e.g.*, *Hackford v. Babbit*, 14 F.3d 1457, 1465 (10th Cir. 1994) ("we are not bound by conclusory allegations, unwarranted inferences, or legal conclusions.").

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quotations and alterations omitted); *see also Khalik*, 671 F.3d at 1190 ("A plaintiff must nudge [his] claims across the line from conceivable to plausible in order to survive a motion to dismiss." (quoting *Twombly*, 550 U.S. at 570)). If a complaint's allegations are "so general that they encompass a wide swath of conduct, much of it innocent," then plaintiff has not stated a plausible claim. *Khalik*, 671 F.3d at 1191 (quotations omitted).

6

Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Bryson*, 534 F.3d at 1286 (alterations omitted).

### III.   ANALYSIS

#### A.  <u>Preliminary Issues</u>

The parties raise several preliminary issues in the briefing.  First, defendant argues that the Court may consider several documents outside of the pleadings.  *See* Docket No. 37 at 1-3, nn.2-5.  Second, Dr. Schacht asserts that it is improper for defendant to incorporate his motion for partial summary judgment, *see* Docket No. 36, into the motion to dismiss.  Docket No. 54 at 4-5.  Before reaching the merits of the motion to dismiss, the Court will address these preliminary issues.

#### *1.  Documents Outside of the Complaint*

Defendant requests that the Court consider several documents outside the pleadings and take judicial notice of a civil case involving Dr. Schacht in another district. Docket No. 37 at 1-3, nn.2-5.  Generally, a court should not consider evidence beyond the pleadings when ruling on a 12(b)(6) motion, *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1282 (10th Cir. 2019), and if the court considers matters outside the complaint, "the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d).  However, the Tenth Circuit has recognized a "limited exception" to this rule: the "district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity."  *Waller*, 932 F.3d at 1282; *see also GFF Corp. v. Associated*

*Wholesale Grocers, Inc*., 130 F.3d 1381, 1384 (10th Cir. 1997) (recognizing that "if a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss").  However, a court has "broad discretion in determining whether or not to accept materials beyond the pleadings."  *Lowe v. Town of Fairland*, 143 F.3d 1378, 1381 (10th Cir. 1998).  When a court takes judicial notice of documents, it may do so only to "show their contents, not to prove the truth of the matters asserted therein."  *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006).

Defendant requests that the Court consider three documents under the *Waller* exception: (1) the notice of suspension of Dr. Schacht's clinical privileges, dated February 14, 2018 (Docket No. 37-1); (2) the notice of proposed removal of Dr. Schacht, dated August 1, 2018 (Docket No. 37-2); and (3) the notice of decision removing plaintiff from federal service, dated August 20, 2018 (Docket No. 37-3).  *See* Docket No. 37 at 1-3, nn.2-5.  Dr. Schacht does not contest the authenticity of the documents.  *See* Docket No. 54 at 1-2.  The Court will consider the notice of suspension, notice of proposed removal, and notice of decision because the documents are referenced in the complaint, central to Dr. Schacht's claims, and the parties do not dispute the documents' authenticity.  *See* Docket No. 29 at 13-16, ¶¶ 71-72, 84-85, 88; *see also Waller*, 932 F.3d at 1282.  However, the Court will only consider the notices to "show their contents, not to prove the truth of the matters asserted therein."  *See Tal*, 453 F.3d at 1264 n.24.

Additionally, defendant requests that the Court take judicial notice of facts from a case involving Dr. Schacht in the District Court for the District of Columbia, *Doe v. Lieberman*, 2022 WL 3576211 (D.D.C. Aug. 11, 2022), which addressed Dr. Schacht's removal from federal service. Docket No. 37 at 2-3 & n.5. Specifically, defendant asks the Court to take judicial notice of the *Lieberman* court's findings that substantial evidence in the record indicated that Dr. Schacht had "below-standard resident reviews," "the residents rated [her] substantially below her peers," and "the director of the residency program[] placed her in the 'bottom 10 percent' of physicians evaluated in the program." *Id*. at 3 (quoting *Lieberman*, 2022 WL 3576211, at *11-14). Dr. Schacht argues that the Court should deny this request. Docket No. 54 at 3-4. "On a Rule 12(b)(6) motion to dismiss, when a court takes judicial notice of another court's opinion, it may do so 'not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity.'" *The Est. of Lockett by & through Lockett v. Fallin*, 841 F.3d 1098, 1111 (10th Cir. 2016) (quoting *Lee v. City of L.A.*, 250 F.3d 668, 690 (9th Cir. 2001)). Because defendant is introducing *Lieberman* for the truth of the facts, not for the existence of the opinion, the Court declines to take judicial notice of the factual findings from *Lieberman*. *See id*.; *see also Irizarry v. City & Cnty. of Denver*, 661 F. Supp. 3d 1073, 1085 (D. Colo. 2023) (declining to take judicial notice of factual findings in another court's opinion); *cf. Mbaku v. Carrington Mortg. Servs., LLC*, 735 F. App'x 533, 536 n.1 (10th Cir. 2018) (unpublished) (taking judicial notice of relevant court documents "only 'to show their contents, not to prove the truth of matters asserted therein.'" (quoting *Tal*, 453 F.3d at 1264 n.24)).

9

### 2.  *Incorporating the Motion for Partial Summary Judgment*

Dr. Schacht argues that it is improper for defendant to incorporate his motion for partial summary judgment into the motion to dismiss.  Docket No. 54 at 4-5.  First, Dr. Schacht argues that defendant has cited no authority "which permits a moving party to incorporate by reference an unresolved dispositive motion into a Rule 12(b)(6) motion." *Id*. at 4.  Second, Dr. Schacht argues that defendant violated the "spirit of this Court's Practice Standards" by filing the Rule 12(b)(6) and Rule 56 motions at the same time, "using the full number of pages the Court allows for each type of filing."  *Id*.  Third, Dr. Schacht argues that defendant's action "unfairly prejudice[s] Dr. Schacht" because defendant presumes that he will prevail on the exhaustion arguments in the Rule 56 motion and Dr. Schacht "cannot possibly identify and describe in the 15 pages allowed for this Response each and every factual allegation and full claim for relief" she raised in her complaint.  *Id*. at 4-5.

Defendant argues that it is a common practice for parties to file simultaneous motions to dismiss and motions for summary judgment based on exhaustion.  Docket No. 59 at 3.  Defendant asserts that pursuing both motions simultaneously serves the interests of judicial economy.  *Id*.  Furthermore, defendant argues that Dr. Schacht does not dispute that the administrative exhaustion arguments are properly raised through a motion for summary judgment, while the failure-to-state-a-claim arguments are properly raised through a motion to dismiss.  *Id*., n.1.

The Court rejects Dr. Schacht's arguments.  The Court's Practice Standards and the Local Rules do not prohibit parties from filing a motion to dismiss and a motion for summary judgment based on administrative exhaustion at the same time.  Courts in this

District have ruled on partial summary judgment motions addressing administrative exhaustion before ruling on the motions to dismiss. *See, e.g.*, *Bivens v. Blaike*, No. 21-cv-00783-PAB-NYW, 2022 WL 2158984, at *1 n.1 (D. Colo. June 15, 2022), *recommendation adopted*, 2022 WL 2716533 (D. Colo. July 13, 2022); *Mostafa v. Garland*, No. 20-cv-00694-PAB-SKC, 2024 WL 37977, at *4 n.5 (D. Colo. Jan. 3, 2024). Furthermore, the Court's Practice Standards state that, "[i]f a party elects to file more than one Rule 12(b) motion, opening briefs and response briefs shall not exceed **fifteen pages** total for all such motions (not each such motion) filed by that party." Practice Standards (Civil Cases), Chief Judge Philip A. Brimmer, § III.F.2.b. Here, defendant did not file multiple Rule 12(b) motions, but rather filed one Rule 12(b) motion and one Rule 56 motion. *See* Docket Nos. 36-37. Defendant's motions complied with the page limitations for motions to dismiss and motions for summary judgment. *See* Practice Standards (Civil Cases), Chief Judge Philip A. Brimmer, §§ III.A, III.F.3.a. (stating that motions for summary judgment shall not exceed twenty pages and all other motions shall not exceed fifteen pages). Plaintiff fails to identify any prejudice when she was allowed, pursuant to the Practice Standards, to file a twenty-page response to the motion for summary judgment and a fifteen-page response to the motion to dismiss. *See id*.[2] Accordingly, the Court rejects plaintiff's arguments.

---

[2] Furthermore, the Court notes that, although Dr. Schacht argues that she "cannot possibly identify and describe in the 15 pages allowed for this Response each and every factual allegation" raised in her complaint, *see* Docket No. 54 at 5, Dr. Schacht never filed a motion requesting an extension of the page limitations. Moreover, Dr. Schacht's response is only twelve pages. *See id*. Dr. Schacht's response could have included three more pages of argument, but Dr. Schacht chose to file a shorter response.

**B.  Disparate Treatment Claim under Title VII**

Dr. Schacht's first claim asserts that defendant subjected plaintiff to disparate treatment under Title VII based on her sex, pregnancy, and national origin.  Docket No. 29 at 36-37, ¶¶ 161-167.  Title VII makes it unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  Such claims can be demonstrated either by "direct evidence that a workplace policy, practice, or decision relies expressly on a protected characteristic" or by "using the burden-shifting framework set forth in *McDonnell Douglas [Corp. v. Green*, 411 U.S. 792 (1973)]."  *Young v. United Parcel Serv., Inc.*, 575 U.S. 206, 213 (2015).[3] Under *McDonnell Douglas*, plaintiff must first establish a *prima facie* case of discrimination.  *Ibrahim v. All. for Sustainable Energy, LLC*, 994 F.3d 1193, 1196 (10th Cir. 2021).  If plaintiff establishes a *prima facie* case, the burden shifts to defendant "to provide a legitimate, nondiscriminatory reason" for the employment action.  *Id*.  If defendant provides a legitimate non-discriminatory reason, the burden shifts back to plaintiff to "show pretext."  *Id*.

To establish a *prima facie* case of disparate treatment, a plaintiff must show that (1) she "belongs to a protected class;" (2) she suffered an "adverse employment action;" and (3) the adverse employment action occurred under circumstances giving "rise to an

---

[3] Defendant and Dr. Schacht analyze plaintiff's disparate treatment claim under the *McDonnell Douglas* framework.  *See* Docket No. 37 at 6-9; Docket No. 54 at 7-10. Because neither party argues that Dr. Schacht's first claim involves direct evidence of discrimination, the Court will evaluate the claim under the *McDonnell Douglas* framework.

inference of discrimination." *Id.*; *see also Mack v. J.M. Smuckers Co.*, 2023 WL 5217705, at *4 (10th Cir. Aug. 15, 2023) (citing *Luster v. Vilsack*, 667 F.3d 1089, 1095 (10th Cir. 2011)).  A plaintiff's burden at the *prima facie* stage is "not onerous."  *Bennett v. Windstream Commc'ns, Inc.*, 792 F.3d 1261, 1267 (10th Cir. 2015) (quoting *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981)).  At the motion to dismiss stage, a "complaint raising a claim of discrimination does not need to conclusively establish a prima facie case of discrimination, but . . . a plaintiff must include enough context and detail to link the allegedly adverse employment action to a discriminatory [] motive with something besides 'sheer speculation.'"  *Bekkem v. Wilkie*, 915 F.3d 1258, 1274-75 (10th Cir. 2019) (quoting *Khalik*, 671 F.3d at 1194).

Defendant argues that Dr. Schacht has failed to plausibly allege that she suffered (1) an adverse employment action (2) under circumstances giving rise to an inference of discrimination.  Docket No. 37 at 4.[4]

---

[4] Defendant also contends that plaintiff must prove an additional element to establish her *prima facie* case, namely, that she was "qualified and satisfactorily performing her job."  Docket No. 37 at 4 (citing *Barlow v. C.R. England, Inc.*, 703 F.3d 497, 505 (10th Cir. 2012)).  Dr. Schacht contends that recent Tenth Circuit cases do not require a plaintiff to plead this element.  Docket No. 54 at 7.  The Court agrees with Dr. Schacht.  In *Ibrahim*, a recent published Tenth Circuit decision, the court did not include this element when articulating the *prima facie* test for a disparate treatment claim for wrongful termination.  *See Ibrahim*, 994 F.3d at 1196.  Even if the *prima facie* case required a plaintiff to establish that she was qualified and satisfactorily performing her job, defendant's sole argument on this element is that plaintiff was not satisfactorily performing her job as evidenced by the factual findings in *Lieberman*.  *See* Docket No. 37 at 9 (citing *Lieberman*, 2022 WL 3576211, at *11-14).  However, as discussed previously, the Court will not take judicial notice of the factual findings in *Lieberman*.  Accordingly, the Court denies this portion of defendant's motion.

### 1. *Adverse Employment Action*

Generally, an adverse employment action is a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Jones v. Okla. City Pub. Sch.*, 617 F.3d 1273, 1279 (10th Cir. 2010) (quoting *Hillig v. Rumsfeld*, 381 F.3d 1028, 1032-33 (10th Cir. 2004)). However, "a mere inconvenience or an alteration of job responsibilities" is not an adverse employment action. *Id.* (quoting *Sanchez v. Denver Pub. Sch.*, 164 F.3d 527, 532 (10th Cir. 1998)).

Defendant argues that plaintiff fails to plausibly allege an adverse employment action. Docket No. 37 at 4-5. Defendant asserts that the alleged incident where Dr. Barnett wrote "unprofessional remarks" in a patient record and the alleged incident where the VA denied Dr. Schacht's request to stay an investigation while she was on FMLA leave do not rise to the level of adverse employment actions. *Id.* at 5. Dr. Schacht responds that she plausibly alleged the following adverse employment actions: (i) the summary suspension of her clinical privileges and placement on a detail; and (ii) her removal from federal employment and revocation of her clinical privileges. Docket No. 54 at 8 (citing Docket No. 29 at 13, 16, ¶¶ 71, 88).[5] In reply, defendant concedes that "the suspension and removal were adverse actions." Docket No. 59 at 4.

---

[5] Dr. Schacht also argues that the VA's action of reporting Dr. Schacht to the National Practitioner Database and the Colorado State Medical Board was an adverse employment action. Docket No. 54 at 8 (citing Docket No. 29 at 17, ¶¶ 92, 94). However, the Court previously found that Dr. Schacht failed to exhaust her administrative remedies for this discrete incident of discrimination and dismissed the portion of claim one based on this allegation. Docket No. 70 at 16.

The amended complaint alleges that, on February 14, 2018, the VA suspended Dr. Schacht's clinical privileges and removed her from all clinical duties.  Docket No. 29 at 13, ¶ 71; *see also* Docket No. 37-1 at 2.  On August 20, 2018, the VA removed Dr. Schacht from federal service and revoked her clinical privileges.  Docket No. 29 at 16, ¶ 88; *see also* Docket No. 37-3 at 2.  The Court finds that these actions constitute adverse employment actions.  *See Jones*, 617 F.3d at 1279 (holding that "firing" and "reassignment with significantly different responsibilities" are adverse employment actions); *Ryan v. Putnam*, 2023 WL 4145436, at *1 (9th Cir. June 23, 2023) (finding that the "revocation of clinical privileges" is an adverse employment action).

### 2.  An Inference of Discrimination

A plaintiff can establish an inference of discrimination in many ways, including by showing (i) "that the employer treated similarly situated employees more favorably," *E.E.O.C. v. PVNF, L.L.C.*, 487 F.3d 790, 800-01 (10th Cir. 2007); (ii) "actions or remarks made by decisionmakers that could be viewed as reflecting a discriminatory animus," *Plotke v. White*, 405 F.3d 1092, 1101 (10th Cir. 2005) (citation omitted); or (iii) "the timing or sequence of events leading to plaintiff's termination."  *Id.*  "Individuals are considered 'similarly-situated' when they deal with the same supervisor, are subjected to the same standards governing performance evaluation and discipline, and have engaged in conduct of 'comparable seriousness.'"  *PVNF*, 487 F.3d at 801 (quoting *McGowan v. City of Eufala*, 472 F.3d 736, 745 (10th Cir. 2006)).

Defendant argues that Dr. Schacht has failed to plead that any of the twelve alleged comparators in the amended complaint are "similarly situated" to Dr. Schacht because the comparators either had different immediate supervisors, different roles, or

engaged in dissimilar conduct compared to Dr. Schacht.  Docket No. 37 at 6-9.

Furthermore, defendant contends that Dr. Schacht has not alleged any actions or

remarks by decisionmakers or that the timing of events supports an inference of

discrimination.  *Id*. at 5-6.  Dr. Schacht responds that she "identified at least *ten* male

physicians and described in detail the facts she is personally aware of that make them

legitimate comparators."  Docket No. 54 at 10 (citing Docket No. 29 at 17-35, ¶¶ 96-

160).

The Court finds that Dr. Schacht has sufficiently alleged that the VA treated

similarly situated employees more favorably than Dr. Schacht.  As noted earlier, the

amended complaint states that Dr. Semian, a male physician of U.S. origin, worked as a

physician at ECHCS.  Docket No. 29 at 18-19, ¶ 98.  Dr. Semian and Dr. Schacht

reported to the same supervisor, the Chief of Anesthesiology, and were subject to the

same standards of performance and evaluation.  *Id*., ¶¶ 98-99.  Dr. Semian failed to

evaluate a patient experiencing life-threatening hypoxia; ignored phone calls from the

nursing staff; got into an altercation with another staff member; failed to comply with

patient safety policies; and provided substandard care to multiple patients, resulting in

numerous complaints being filed against Dr. Semian.  *Id*. at 19-21, ¶¶ 101-104, 107-

109, 112.  The complaint alleges that the VA accused Dr. Schacht of posing a threat to

patient safety and failing to meet accepted standards of clinical practice.  *Id*. at 17, ¶ 96.

The Court finds that Dr. Semian is therefore "similarly situated" to Dr. Schacht because

both doctors had the same supervisor, were subjected to the same performance

evaluation and discipline standards, and allegedly engaged in conduct of "comparable

seriousness."  *See PVNF*, 487 F.3d at 801.  Defendant contends that Dr. Semian was

not treated "so differently to give rise to an inference of discrimination" because the VA disciplined Dr. Semian by suspending him for three days and temporarily suspending his clinical privileges.  Docket No. 37 at 8 (citing Docket No. 29 at 20, 22, ¶¶ 105-06, 113).  However, the Court finds that Dr. Schacht has plausibly alleged that the VA treated Dr. Semian more favorably than Dr. Schacht because the VA never revoked Dr. Semian's clinical privileges or removed him from federal service, while the VA revoked Dr. Schacht's clinical privileges and removed her from federal service.  *See* Docket No. 29 at 16, 22, ¶¶ 88, 115.  Dr. Schacht has therefore plausibly established an inference of discrimination by showing that the VA treated similarly situated employees more favorably than her.  *See PVNF*, 487 F.3d at 800-01; *Aguirre v. Pueblo Sch. Dist. No. 60*, No. 21-cv-02174-PAB-MDB, 2023 WL 2402922, at *7-8 (D. Colo. Mar. 8, 2023) (finding that plaintiff plausibly alleged circumstances that give rise to an inference of discrimination at the motion to dismiss stage by identifying two teachers outside of plaintiff's protected class who were treated differently); *cf. Khalik*, 671 F.3d at 1194 (holding that a plaintiff had not alleged enough facts to support a claim of discrimination beyond sheer speculation where she raised "no allegations of similarly situated employees who were treated differently").[6]  The Court therefore denies this portion of defendant's motion.

### C. Hostile Work Environment Claim under Title VII

Dr. Schacht's first claim also asserts a hostile work environment claim under Title VII based on Dr. Schacht's sex and national origin.  Docket No. 29 at 36-37, ¶¶ 161-

---

[6] Because Dr. Schacht has plausibly alleged that Dr. Semian is a similarly situated employee who the VA treated differently, the Court will not address defendant's arguments regarding the other comparators.  *See* Docket No. 37 at 6-9.

167.  "A hostile work environment claim is 'composed of a series of separate acts that collectively constitute one unlawful employment practice.'"  *Throupe v. Univ. of Denver*, 988 F.3d 1243, 1251 (10th Cir. 2021) (quoting *Nat. R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002)).  To establish a hostile work environment claim, a plaintiff must show that (1) she was discriminated against because of a protected category, such as sex or national origin, and (2) that the discrimination was "sufficiently severe or pervasive such that it altered the terms or conditions of her employment and created an abusive working environment."  *Morris v. City of Colorado Springs*, 666 F.3d 654, 663 (10th Cir. 2012); *see also Throupe*, 988 F.3d at 1251; *see also Hernandez v. Valley View Hosp. Ass'n*, 684 F.3d 950, 957 (10th Cir. 2012).  Defendant argues that Dr. Schacht cannot satisfy either element.  Docket No. 37 at 9-10.  Dr. Schacht responds that she has "satisfied these requirements through the factual allegations she pled in the Amended Complaint at ¶¶ 40-57, 68-70, 77-80, 84-86, 89-90, 92-94, 96, and 98-160."  Docket No. 54 at 11.  Dr. Schacht provides no further explanation or argument on these elements.

### 1.  Severe or Pervasive

To establish a hostile work environment claim, a plaintiff must demonstrate that defendant's conduct was "sufficiently severe or pervasive such that it altered the terms or conditions of her employment and created an abusive working environment."  *Morris*, 666 F.3d at 663.  "Proof of either severity or pervasiveness can serve as an independent ground to sustain a hostile work environment claim."  *Throupe*, 988 F.3d at 1252.  Courts analyze severity and pervasiveness under the "totality of the circumstances," considering factors such as "the frequency of the discriminatory

conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (citation omitted). This element has both a subjective and objective component, meaning that the plaintiff "must: (1) subjectively perceive 'the conduct to be severe or pervasive,' and (2) 'show that a rational jury could find that the workplace is permeated with discriminatory intimidation, ridicule, and insult.'" *Ford v. Jackson Nat'l Life Ins. Co.*, 45 F.4th 1202, 1228 (10th Cir. 2022) (quoting *Throupe*, 988 F.3d at 1252).

"A few isolated incidents of discriminatory conduct and run-of-the mill boorish, juvenile, or annoying behavior that is not uncommon in American workplaces are insufficient to support a claim for hostile work environment." *Id.* (internal quotations and citation omitted); *see also Brown v. LaFerry's LP Gas Co., Inc.*, 708 F. App'x 518, 522 (10th Cir. 2017) (unpublished) ("It is well-established that a plaintiff cannot demonstrate pervasive harassment by pointing to a few isolated incidents" of "enmity" or sporadic slurs). As to whether conduct is "severe," the Tenth Circuit has held that "[m]ost incidents found to meet this standard involve some kind of physical assault." *Brown*, 708 F. App'x at 522 (citing *Morris*, 666 F.3d at 666-67). The Tenth Circuit has emphasized that the determination of whether conduct is "severe or pervasive is typically a question for the jury;" however, a court may dismiss a claim when plaintiff fails to make a sufficient showing. *Throupe*, 988 F.3d at 1252; *see also Brown*, 708 F. App'x at 523 (dismissing hostile work environment claim at the motion to dismiss stage).

Defendant argues that Dr. Schacht has not sufficiently alleged that she was subjected to severe or pervasive harassment. Docket No. 37 at 10-11. Defendant asserts that the incident with Dr. Barnett was an "[i]solated incident." *Id.* at 10.

Defendant contends that Dr. Schacht's suspension, removal, and the alleged denial of a stay of the VA's investigation cannot form the basis of Dr. Schacht's hostile work environment claim because these incidents are discrete acts of discrimination and courts are reluctant to consider discrete acts as part of a hostile work environment claim. *Id.* at 11 (citing *Lester v. Natsios*, 290 F. Supp. 2d 11, 32 (D.D.C. 2003)). Moreover, defendant argues that these incidents do not constitute severe or pervasive discrimination because "being contacted about work-related matters while on leave and being subjected to disciplinary actions do not create 'an atmosphere sufficiently severe to qualify as being permeated with discriminatory intimidation, ridicule, and insult.'" *Id.* (quoting *Williams v. FedEx Corp. Servs.*, 849 F.3d 889, 897-98 (10th Cir. 2017)).

Without elaboration, Dr. Schacht asserts that the following allegations in her amended complaint form the basis of her hostile work environment claim: paragraphs "40-57, 68-70, 77-80, 84-86, 89-90, 92-94, 96, and 98-160." Docket No. 54 at 11. Given these citations, Dr. Schacht bases her hostile work environment claim on allegations that the VA solicited negative comments about Dr. Schacht from the resident training program in the Fall of 2017; the VA selected Dr. Schacht's cases for review in the Fall of 2017; the incident with Dr. Barnett on December 17, 2017; the VA preventing Dr. Schacht from supervising residents in January 2018; and the VA's August 1, 2018 notification that it proposed to remove Dr. Schacht from federal service. *See* Docket No. 29 at 8-11, 13-16, ¶¶ 40-57, 68-70, 77-80, 84-86.[7]

---

[7] The allegations in paragraphs 89 and 90 discuss Dr. Schacht's case with the VA's Disciplinary Appeals Board, that was later appealed to the D.C. Circuit. *See* Docket No. 29 at 16, ¶¶ 89-91. The allegations in paragraphs 96 and 98 through 160 discuss Dr. Schacht's alleged male comparators for her disparate treatment claim. *Id.* at 17-35, ¶¶ 96, 98-160. The Court fails to see how these allegations could support Dr.

The Court finds that Dr. Schacht has failed to demonstrate that these allegations are "sufficiently severe or pervasive such that it altered the terms or conditions of her employment and created an abusive working environment." *See Morris*, 666 F.3d at 663. The Court agrees with defendant that the episode with Dr. Barnett is an isolated incident. The amended complaint alleges that, on December 17, 2017, Dr. Barnett "snapped at Dr. Schacht;" made "threatening remarks that he was going to report her and make sure she lost her medical license for making clinical recommendations about 'his patient;'" and wrote "negative and unprofessional remarks" about Dr. Schacht in the patient's chart. Docket No. 29 at 10, ¶¶ 51, 54. Dr. Schacht describes no other incidents where Dr. Barnett or any other co-workers or supervisors made discriminatory comments towards Dr. Schacht.[8] A "plaintiff does not make a sufficient showing of a

---

Schacht's hostile work environment claim. Because Dr. Schacht has provided no explanation as to how these allegations form the basis for her hostile work environment claim, the Court declines to consider these allegations. Furthermore, the allegations in paragraphs 92 through 94 discuss the VA's actions of reporting Dr. Schacht to the National Practitioner Database in 2022 and the Colorado State Medical Board in 2021. *Id*. at 17, ¶¶ 92-94. However, as discussed previously, the Court found that Dr. Schacht failed to exhaust her administrative remedies for these allegations. Docket No. 70 at 16. As a result, the Court will not consider these allegations when analyzing the hostile work environment claim.

[8] The amended complaint alleges that Dr. Schacht's male peers "often treated" her in a "disrespectful, dismissive, and even hostile manner." Docket No. 29 at 10, ¶ 51. The Court finds that this allegation is conclusory because Dr. Schacht provides no explanation regarding the co-workers' actions, the co-workers' identities, or estimated dates for this conduct. Furthermore, the amended complaint states that, in 2015, Dr. Schacht's former supervisor told her that medical staff are likely "not used to people like you, you Latin women are so passionate they think that you're mad at them" and Dr. Schacht's male colleagues often referred to her as a "hot headed temperamental Latina." *Id*. at 7, ¶¶ 35-36. However, Dr. Schacht clarified in her response to defendant's summary judgment motion that she was not pursuing these allegations as part of her hostile work environment claim, but rather included the allegations as background evidence to support her timely claims. Docket No. 56 at 14. Accordingly, the Court will not consider the allegations from 2015 as a basis for Dr. Schacht's hostile work environment claim.

pervasively hostile work environment by demonstrating a few isolated incidents of sporadic slurs.  Instead, there must be a steady barrage of opprobrious comments." *Morris*, 666 F.3d at 666 (internal alterations, quotations, and citation omitted) (concluding that allegations that plaintiff's coworker "would yell at her [and] demean her work" were insufficient to establish that the alleged harassment was pervasive); *see also Brown*, 708 F. App'x at 522-23 (concluding that three comments from a supervisor were insufficient to establish that the conduct was pervasive).

Dr. Schacht fails to explain how the VA's other actions – regarding soliciting negative comments about Dr. Schacht from the residents, selecting Dr. Schacht's cases for review, preventing Dr. Schacht from supervising residents, and proposing to remove Dr. Schacht from federal service – created a workplace atmosphere "permeated with discriminatory intimidation, ridicule, and insult.'"  *See Ford*, 45 F.4th at 1228; *Brown*, 708 F. App'x at 523; *see also Chavez v. New Mexico*, 397 F.3d 826, 833 (10th Cir. 2005) ("what is important in a hostile environment claim is the *environment*").  The amended complaint does not describe how these incidents created "an abusive working environment."  *See Morris*, 666 F.3d at 663; *see also Williams*, 849 F.3d at 897 (concluding that alleged "disciplinary action" from supervisors was insufficient to demonstrate an atmosphere "permeated with discriminatory intimidation, ridicule, and insult." (citation omitted)).  Dr. Schacht cites no case law suggesting that these discrete acts could form the basis of her hostile work environment claim.  Other courts have found that a plaintiff cannot rely solely "on the discrete acts upon which [s]he bases [her] discrimination and retaliation claims to support a hostile [work] environment claim." *Hampton v. Vilsack*, 760 F. Supp. 2d 38, 57 (D.D.C. 2011), *aff'd*, 685 F.3d 1096 (D.C.

Cir. 2012); *see also Peters v. D.C.*, 873 F. Supp. 2d 158, 191 (D.D.C. 2012) (collecting cases).

Moreover, the Court finds that Dr. Schacht has failed to allege that the incident with Dr. Barnett or any of the other incidents are sufficiently "severe" to give rise to a cognizable hostile work environment claim.  *See Brown*, 708 F. App'x at 522 (describing that the severity standard typically involves "some kind of physical assault").  Ultimately, there "is no indication that the relatively isolated incidents in this case 'altered the terms or conditions of [plaintiff's] employment and created an abusive working environment."  *Morris*, 666 F.3d at 669.  As a result, the Court finds that the amended complaint does not plausibly allege an inference of severe or pervasive conduct sufficient to establish a hostile work environment claim.

### 2.  *Because of Sex or National Origin*

Even if the amended complaint plausibly alleged the severe or pervasive prong, Dr. Schacht would also need to allege that she was discriminated against "because of" a protected status, such as sex or national origin.  *See Throupe*, 988 F.3d at 1251.  In order to demonstrate that she was harassed because of her sex, "a plaintiff may cite acts of harassment that are either facially sex based or facially sex neutral if context indicates that acts that may appear neutral in isolation could be understood by a jury to be part of an overall animus and pattern of sexual discrimination and harassment."  *Sanderson v. Wyo. Highway Patrol*, 976 F.3d 1164, 1174 (10th Cir. 2020); *see also Throupe*, 988 F.3d at 1251.  "Facially neutral abusive conduct can support a finding of gender animus sufficient to sustain a hostile work environment claim when that conduct is viewed in the context of other, overtly gender-discriminatory conduct.  If it reasonably

could be inferred that the conduct was related to gender or arose out of a context in which admittedly sex and gender-related conduct occurred, then it is for the fact finder to decide whether such an inference should be drawn." *Sanderson*, 976 F.3d at 1174 (citation omitted).  Similarly, for a national origin hostile work environment claim, "facially neutral abusive conduct" can support a finding of national origin animus when that conduct is viewed in the context of other, overtly discriminatory conduct.  *Hernandez*, 684 F.3d at 960.

Defendant argues that Dr. Schacht has not plausibly alleged that any hostility was "based on" discriminatory animus because of Dr. Schacht's sex or national origin. Docket No. 37 at 11.  Defendant asserts that "[g]eneral harassment alone is not actionable."  *Id*. (quoting *Williams*, 849 F.3d at 897).  Dr. Schacht does not respond to this argument.

The Court finds that Dr. Schacht has failed to allege that any of the conduct was motivated by Dr. Schacht's sex or national origin.  The incident with Dr. Barnett is "facially neutral" because there are no allegations that Dr. Barnett snapped at Dr. Schacht because of her gender or national origin, or that the "negative and unprofessional remarks" in the patient's chart contained sex-based or national origin-based comments.  *See* Docket No. 29 at 10, ¶¶ 51, 54; *see also Brown*, 708 F. App'x at 523 (finding that plaintiff failed to "allege that his co-workers were racially motivated when they stopped speaking to him in the two or three weeks before he resigned"). Furthermore, the other incidents that Dr. Schacht includes in her hostile work environment claim, including her allegations that the VA solicited negative comments about Dr. Schacht from the residents, selected Dr. Schacht's cases for review, and

prevented Dr. Schacht from supervising residents, also appear facially neutral.  *See* Docket No. 29 at 9-10, 13, ¶¶ 45, 49, 68; *see also Montano v. Brennan*, 718 F. App'x 690, 694 (10th Cir. 2017) (unpublished) (holding that, even if "unwarranted disciplinary proceedings" satisfied the severe or pervasive prong, plaintiff failed to show any evidence that the disciplinary proceedings were "motivated by [her] gender.").  Dr. Schacht has failed to show how these facially neutral incidents could support a finding of gender or national origin animus when she has not alleged any other overtly discriminatory conduct based on sex or national origin in her workplace.  *Compare Sanderson*, 976 F.3d at 1174-76 (holding that "[w]hen considered alongside the facially sex-based incidents, a jury could find that other hostile acts, which were not explicitly sexual in nature, were nevertheless part of the sexual harassment," particularly considering the evidence that plaintiff's division "as a whole does not accept females"). The amended complaint contains no allegations suggesting that Dr. Schacht's workplace was permeated with general hostility towards women or individuals of a different national origin during the relevant timeframe for her hostile work environment claim.

Accordingly, the Court finds that Dr. Schacht has failed to plausibly allege that defendant's conduct was "sufficiently severe or pervasive such that it altered the terms or conditions of her employment and created an abusive working environment," *see Morris*, 666 F.3d at 663, and Dr. Schacht has failed to allege any facts showing that any harassment was based on her sex or national origin.  *See Montano*, 718 F. App'x at

694.  As a result, the Court grants this portion of defendant's motion and dismisses Dr.

Schacht's hostile work environment claim with prejudice.[9]

### D.  Retaliation Claim under Title VII, the ADA, and the Rehabilitation Act

Dr. Schacht's second and fourth causes of action assert retaliation claims under

Title VII, the ADA, and the Rehabilitation Act.  Docket No. 29 at 37-41, ¶¶ 168-175, 182-

186.  As a preliminary matter, defendant asserts that the ADA does not apply to the VA.

Docket No. 37 at 14 n.10 (citing *Brown v. Austin*, 13 F.4th 1079, 1084 n.3 (10th Cir.

2021)).  Dr. Schacht does not address this argument.  Defendant is correct.  The ADA

"does not apply to federal employers."  *Brown*, 13 F.4th at 1084 n.3 (recognizing,

however, that a federal employee could bring claims under the Rehabilitation Act); *Wise*

*v. DeJoy*, 71 F.4th 744, 748 n.1 (10th Cir. 2023) (noting that the federal government is

excluded from the definition of an "employer" under the Americans with Disabilities Act

(citing 42 U.S.C. § 12111(5)(B)(i))).  Accordingly, the Court dismisses the portion of

claim four alleging retaliation under the ADA.

Title VII forbids retaliation against an employee because he has "opposed" any

practice made unlawful by Title VII or because he has "made a charge, testified,

---

[9] In her response, Dr. Schacht states that, if the Court is inclined to grant the motion to dismiss, "Plaintiff requests the opportunity to further amend her Complaint." Docket No. 54 at 12.  This request for leave to amend does not comply with the Local Rules, which provide that a motion "shall not be included in a response or reply to the original motion," but must instead "be filed as a separate document."  D.C.COLO.LCivR 7.1(d); *see also Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1283 (10th Cir. 2021) ("A court need not grant leave to amend when a party fails to file a formal motion." (citation omitted)).  However, in the absence of futility, undue delay, bad faith, or dilatory motive on the part of the plaintiff, leave to amend should be "freely given."  *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires.").  Here, the Court finds that an amendment would be futile because Dr. Schacht has offered no facts suggesting that she could plausibly plead either prong of her hostile work environment claim.

assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).  Where there is no direct evidence of retaliation, the burden-shifting analysis established in *McDonnell Douglas* also applies to retaliation claims brought under Title VII or the Rehabilitation Act.  *Singh v. Cordle*, 936 F.3d 1022, 1042 (10th Cir. 2019); *see also Brown*, 13 F.4th at 1090.  To state a *prima facie* case of retaliation under Title VII or the Rehabilitation Act, a plaintiff must show: "(1) that she engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action."  *Reznik v. inContact, Inc.*, 18 F.4th 1257, 1260 (10th Cir. 2021) (citation omitted) (Title VII); *see also Brown*, 13 F.4th at 1090 (Rehabilitation Act).[10]  Defendant agrees that plaintiff engaged in protected activities by filing the 2018 EEO Complaint and requesting reasonable accommodations related to her pregnancy.  Docket No. 37 at 12.  However, defendant argues that Dr. Schacht has failed to plead the second and third elements of her retaliation claims.  *Id.*

### 1.  Materially Adverse Action

To establish this element, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge

---

[10] "The standard for retaliation claims under the Rehabilitation Act is the same as the standard for retaliation claims under the Americans with Disabilities Act."  *Reinhardt v. Albuquerque Pub. Sch. Bd. of Educ.*, 595 F.3d 1126, 1131 (10th Cir. 2010); *see also Brown*, 13 F.4th at 1084 n.3 (noting that a court may rely on ADA cases to assess a retaliation claim under the Rehabilitation Act "[b]ecause the Rehabilitation Act incorporates standards from the ADA").

of discrimination." *Reinhardt*, 595 F.3d at 1133 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).  A materially adverse action "is not limited to discriminatory actions that affect the terms and conditions of employment." *Id*. (quoting *Burlington*, 548 U.S. at 64).  Rather, actions that pose "a significant risk of humiliation, damage to reputation, and a concomitant harm to future employment prospects" may constitute materially adverse actions.  *Id*. (quoting *Annett v. Univ. of Kan.*, 371 F.3d 1233, 1239 (10th Cir. 2004)).  The inquiry into whether actions are "materially adverse is an objective one—that is, whether a reasonable person would [] have been dissuaded from engaging in protected activity—and is 'not based on a plaintiff's personal feelings.'" *Dye v. Moniz*, 672 F. App'x 836, 841 (10th Cir. 2016) (unpublished) (quoting *Daniels v. United Parcel Serv., Inc.*, 701 F.3d 620, 638 (10th Cir. 2012)).

Defendant argues that Dr. Schacht has failed to establish that she suffered a materially adverse action.  Docket No. 37 at 12.  Defendant appears to argue that the VA's actions were not adverse because Dr. Schacht amended her EEO Complaint twice to add additional allegations.  *Id*.  Dr. Schacht responds that she has established this element through the allegations "set forth in the Amended Complaint at ¶¶ 169-175." Docket No. 54 at 11.

The amended complaint alleges that, on February 14, 2018, the VA suspended Dr. Schacht's clinical privileges and removed her from all clinical duties.  Docket No. 29 at 13, ¶ 71.  Furthermore, on August 20, 2018, the VA removed Dr. Schacht from federal service and revoked her clinical privileges.  *Id*. at 16, ¶ 88.  The Court finds that the suspension of clinical privileges would dissuade a reasonable doctor from making or supporting a charge of discrimination because a suspension of clinical privileges could

pose a risk of humiliation, reputational harm, or harm to future employment prospects. *See Reinhardt*, 595 F.3d at 1133. Furthermore, termination of employment is a materially adverse action. *See Anderson v. AOL, LLC*, 363 F. App'x 581, 586 (10th Cir. 2010) (unpublished). Accordingly, the Court finds that Dr. Schacht has sufficiently pled this element of her retaliation claims.

### 2. Causal Connection

To establish a causal connection between the protected activity and the materially adverse action, a plaintiff must "present evidence of circumstances that justify an inference of retaliatory motive." *Bekkem*, 915 F.3d at 1271 (quoting *Ward v. Jewell*, 772 F.3d 1199, 1203 (10th Cir. 2014)). "Temporal proximity – when the protected conduct is closely followed by the adverse action – is often the basis for inferring a causal connection." *Duda v. Elder*, No. 18-cv-02890-RBJ, 2020 WL 6290383, at *8 (D. Colo. Oct. 27, 2020), *aff'd*, 7 F.4th 899 (10th Cir. 2021) (citing *Ward*, 772 F.3d at 1203); *see also Bekkem*, 915 F.3d at 1271. However, the Tenth Circuit has found that "a three-month gap between protected activity and an adverse action is too long to support an inference of causation on its own. Thus, where a gap of three months or longer has occurred, a plaintiff must present other evidence—more than mere speculation, conjecture, or surmise—to establish that her protected activity was a but-for cause of the adverse employment action." *Bekkem*, 915 F.3d at 1271 (internal quotations and citations omitted); *see also Painter v. Midwest Health, Inc.,* 2022 WL 17332734, at *5 (10th Cir. Nov. 30, 2022); *Anderson v. Coors Brewing Co*., 181 F.3d 1171, 1179 (10th Cir. 1999); *Tiger v. Powell*, No. 21-cv-01892-PAB-SKC, 2022 WL 4182413, at *11 (D. Colo. Sept. 13, 2022) (collecting cases). Furthermore, to satisfy the causal connection

element, a "plaintiff must show that the individual who took adverse action against [her] knew of the employee's protected activity." *Montes v. Vail Clinic, Inc.*, 497 F.3d 1160, 1176 (10th Cir. 2007) (citation omitted).

Defendant argues that Dr. Schacht has failed to allege a causal connection for her Title VII or Rehabilitation Act claims. Docket No. 37 at 12-13. For the Rehabilitation Act claim, defendant concedes that plaintiff engaged in a protected activity by requesting reasonable accommodations and disclosing her pregnancy status to Dr. Black and Ms. Gard about a month before Dr. Schacht was suspended. *Id.* at 13 (citing Docket No. 29 at 11, 13, ¶¶ 60, 71). However, defendant argues that plaintiff never alleges that Dr. Mangione or Director Houser-Hanfelder, the supervisors who suspended and removed Dr. Schacht, knew about her pregnancy or accommodation request. *Id.* For the Title VII claim, defendant concedes that Dr. Schacht engaged in a protected activity by filing her 2018 EEO Complaint. *Id.* at 12. However, defendant argues that Dr. Schacht cannot rely solely on the temporal proximity between the 2018 EEO Complaint and Dr. Schacht's suspension or removal given the *Lieberman* court's findings that Dr. Schacht's removal was supported by substantial evidence. *Id.* at 13 (citing *Lieberman*, 2022 WL 3576211, at *11). Dr. Schacht does not respond to defendant's specific arguments, but rather states that she has established the causation element through the allegations "set forth in the Amended Complaint at ¶¶ 169-175." Docket No. 54 at 11.

The Court finds that Dr. Schacht has pled a causal connection for her Title VII retaliation claim. Dr. Schacht engaged in a protected activity by filing her 2018 EEO Complaint. *See* Docket No. 29 at 13, ¶ 71. Dr. Schacht contacted the VA's EEO

Counselor on December 27, 2017 to initiate a complaint and Dr. Schacht filed the formal complaint on February 14, 2018. *Id*. at 11, 13, ¶¶ 59, 71. The VA suspended Dr. Schacht's clinical privileges and removed her from all clinical duties the same day, on February 14, 2018. *Id*. at 13, ¶ 71; *see also* Docket No. 37-1 at 3. A temporal connection of less than a day strongly supports inferring a causal connection between the protected activity and materially adverse action. *See Bekkem*, 915 F.3d at 127. Furthermore, Dr. Schacht has plausibly alleged that the supervisor who took adverse action against her knew of Dr. Schacht's protected activity. *See Montes*, 497 F.3d at 1176. Director Houser-Hanfelder issued Dr. Schacht the notice of suspension of clinical privileges. *See* Docket No. 37-1 at 2-3. On January 26, 2018, the EEO Counselor informed Director Houser-Hanfelder that Dr. Schacht was filing a complaint. Docket No. 29 at 37-38, ¶¶ 170, 172.

The Court also finds that Dr. Schacht has pled a causal connection for her retaliation claim under the Rehabilitation Act. On January 11, 2018, Dr. Schacht disclosed to Dr. Black and Ms. Gard that Dr. Schacht was experiencing a high-risk pregnancy and needed reasonable accommodations. *Id*. at 11-12, ¶¶ 60-64. Dr. Schacht alleges that her supervisors, including Director Houser-Hanfelder, Dr. Mangione, and Dr. Black, were aware of her pregnancy and her need for accommodations. *Id*. at 3-4, ¶¶ 13, 18. Nearly one month later, the VA suspended Dr. Schacht's clinical privileges. *Id*. at 13, ¶ 71. A temporal connection of a month supports inferring a causal connection between the protected activity and materially adverse action. *See Bekkem*, 915 F.3d at 127; *Allen v. Garden City Co-op, Inc*., 651 F. Supp. 2d 1249, 1259 (D. Kan. 2009) (holding that the "close temporal proximity" of one month

between the protected activity and adverse action "established causation" in the *prima facie* stage).

Accordingly, Dr. Schacht has plausibly alleged retaliation claims under Title VII and the Rehabilitation Act, and the Court therefore denies this portion of defendant's motion.

### E. <u>Discrimination under the ADA and the Rehabilitation Act</u>

Dr. Schacht's third claim asserts a disability discrimination claim under the ADA and the Rehabilitation Act.  Docket No. 29 at 39-40, ¶¶ 176-181.  Defendant asserts that the ADA does not apply to the VA.  Docket No. 37 at 14 n.10 (citing *Brown*, 13 F.4th at 1084 n.3).  Dr. Schacht does not address this argument.  Because the ADA does not apply to the VA, the Court dismisses the portion of claim three alleging discrimination under the ADA.  *See Brown*, 13 F.4th at 1084 n.3.

To state a *prima facie* claim for discrimination under the Rehabilitation Act, a plaintiff must establish that (1) she is disabled under the Act; (2) she is "otherwise qualified" for the position; and (3) she was discriminated against solely by reason of her disability.  *Cline v. Clinical Perfusion Sys., Inc.*, 92 F.4th 926, 932 (10th Cir. 2024).  The amended complaint alleges that Dr. Schacht was disabled between January 11, 2018 and July 10, 2018 due to her high-risk pregnancy.  Docket No. 29 at 39, ¶ 177.  Defendant does not contest that Dr. Schacht was disabled, but rather argues that Dr. Schacht has failed to plead the second and third elements.  Docket No. 37 at 14.

#### 1. *Otherwise Qualified for the Position*

Under the Rehabilitation Act, there is a two-part analysis to determine whether an individual is "otherwise qualified" for a position.  *Cline*, 92 F.4th at 932.  First, the plaintiff

must show that she is "able to perform the essential functions of [her] job" notwithstanding her disability. *Id.* (citation omitted). If plaintiff cannot do so, then the court "must determine whether any reasonable accommodation by the employer would enable [her] to perform those functions." *Id.* (citation omitted). "[A] brief leave of absence for medical treatment or recovery can be a reasonable accommodation." *Id.* (quoting *Robert v. Bd. of Cnty. Comm'rs of Brown Cnty.*, 691 F.3d 1211, 1217-18 (10th Cir. 2012)). For a leave of absence to be a reasonable accommodation, an employee must (1) "provide the employer an estimated date when [she] can resume [her] essential duties;" and (2) "assure an employer that [she] can perform the essential functions of [her] position in the 'near future.'" *Id.* (quoting *Robert*, 691 F.3d at 1218). The Tenth Circuit "has held that a leave of absence exceeding six months is *per se* unreasonable." *Id.* at 933 (quoting *Hwang v. Kan. State Univ.*, 753 F.3d 1159, 1162 (10th Cir. 2014)).

Defendant argues that Dr. Schacht was not qualified for her position while she was on FMLA leave because "she was on bed rest and unable to perform her job." Docket No. 37 at 15. Defendant does not contest that Dr. Schacht was qualified to perform her position prior to taking FMLA leave in March 2018. Dr. Schacht does not respond to defendant's specific argument.

The Court finds that Dr. Schacht has plausibly alleged that she was qualified for her position. The amended complaint alleges that Dr. Schacht was able to perform her job duties while pregnant with the following reasonable accommodations: (1) not lifting or pushing heavy objects; (2) work hours limited to eight to ten hours per day; and (3) limiting exposure to radiation. Docket No. 29 at 12, ¶¶ 61-65. On March 15, 2018, Dr. Schacht requested FMLA leave and she was confined to bed rest. *Id.* at 15, ¶ 81. Dr.

Schacht's FMLA leave ended on July 10, 2018.  *Id.* at 39, ¶ 177.  The Court finds that FMLA leave was a reasonable accommodation for Dr. Schacht.  *See Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 967 (10th Cir. 2002) (holding that plaintiff satisfied the second element of an ADA discrimination claim because FMLA leave was a reasonable accommodation when plaintiff "had requested and taken no more leave than the FMLA already required that she be given").  Furthermore, Dr. Schacht's physician informed the VA that Dr. Schacht's disability was expected to last until her delivery on or about May 2, 2018.  Docket No. 29 at 12, ¶ 61.  The VA therefore had notice that Dr. Schacht could perform her duties in the near future.  *See Cline,* 92 F.4th at 932.  As a result, the Court finds that Dr. Schacht has plausibly alleged the second element of her Rehabilitation Act claim.

### 2.  Causation

Defendant argues that Dr. Schacht "fails to plausibly allege she was discriminated against due to her pregnancy or requests for accommodations."  Docket No. 37 at 15.  Defendant provides no further explanation on this element.  "The court will not consider . . .  issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation."  *United States v. Wooten*, 377 F.3d 1134, 1145 (10th Cir. 2004) (citation and internal quotations omitted).  Accordingly, the Court declines to address defendant's argument on the third element.

As a result, the Court finds that Dr. Schacht has plausibly alleged her discrimination claim under the Rehabilitation Act and the Court denies this portion of defendant's motion.

IV.     **CONCLUSION**

It is therefore

**ORDERED** that Defendant's Motion to Dismiss Amended Complaint [Docket No. 37] is **GRANTED in part** and **DENIED in part**.  It is further

**ORDERED** that the portion of claim one alleging a hostile work environment is **DISMISSED with prejudice**.  It is further

**ORDERED** that the portion of claim four alleging retaliation under the ADA is **DISMISSED with prejudice**.  It is further

**ORDERED** that the portion of claim three alleging disability discrimination under the ADA is **DISMISSED with prejudice**.

DATED February 29, 2024.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge