## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:23-cv-00709-PAB-SBP

ELIZABETH SCHACHT,

　　　　Plaintiff,

v.

DENIS R. MCDONOUGH,

　　　　Defendant.

---

## ORDER ON DISCOVERY DISPUTES

---

**Susan Prose, United States Magistrate Judge**

Plaintiff Dr. Elizabeth Schacht brings this action against Defendant Denis R.
McDonough, the Secretary of the United States Department of Veterans Affairs ("VA"), alleging
claims of employment discrimination. This matter is before the court after the parties contacted
the chambers of the undersigned United States magistrate judge pursuant to the court's informal
procedures for resolving discovery disputes. The parties' disputes primarily concern the scope of
discovery as it relates to potential comparators of Dr. Schacht. The parties submitted a joint
discovery statement ("JDS") outlining the disputes and their arguments as to each issue and later
filed supplements, ECF Nos. 93, 95, after the court held a discovery conference on November 6,
2024, *see* ECF No. 91,[1] in which counsel for both parties provided arguments in support of their

---

[1] This court acknowledges the significant length of time that has passed since the conference,
which stems from an internal issue concerning this court's docket. The undersigned deeply
regrets this situation and personally apologizes to the parties for the delay for which this court is
responsible.

respective positions. For the reasons below, the court authorizes additional limited discovery as
set forth in this Order.

I.      **Background and General Discussion**

The court assumes the reader's familiarity with the factual and procedural history of the
case and therefore recounts only what is necessary to resolve the current discovery disputes.[2]

Dr. Schacht was employed by the VA as an anesthesiologist at the VA's Eastern Colorado
Health Care System, more specifically the Rocky Mountain Regional VA Medical Center
("Medical Center"), from 2015 until August 2018. Dr. Schacht issued written discovery requests,
and at issue here are Defendant's responses to multiple interrogatories and requests for
production ("RFPs"), Ex. B to JDS ("Responses to Written Discovery"). Dr. Schacht argues that
Defendant's responses were improperly cabined or otherwise not fully responsive.

The JDS and the parties' arguments at the discovery conference focused more on general
areas of disagreement rather than the specifics of Dr. Schacht's written discovery requests and
Defendant's responses thereto. These general areas in dispute concern the scope of discovery for
potential comparators of Dr. Schacht. More specifically, the parties disagree on several discrete
issues. The court will address these issues, and because it concludes that some additional
discovery is proper, the court will then set forth the contours of the remaining discovery.

***Comparators based on chain of command.*** First, the parties disagree whether all
physicians who reported to Dr. Ellen Mangione, the Medical Center's Chief of Staff, and Sallie
Houser-Hanfelder, the Medical Center's Director, are potential comparators, as Dr. Schacht
argues, or, as Defendant insists, whether potential comparators are limited to only those

---

[2] For background, *see* ECF No. 70 at 1-5.

physicians who shared Dr. Schacht's immediate supervisor, Dr. Ian Black, the then-Anesthesiology Chief.

Binding Tenth Circuit precedent compels the court to agree with Dr. Schacht that it is not proper to limit discovery to only those physicians who reported to Dr. Black. The Tenth Circuit has held that, "to be similarly situated, the plaintiff and the comparator must 'share a supervisor _or_ decision-maker.'" *Donez v. Leprino Foods, Inc.*, No. 21-1212, 2022 WL 500549, at *7 (10th Cir. Feb. 18, 2022) (emphasis added, quoting *Ibrahim v. All. for Sustainable Energy, LLC*, 994 F.3d 1193, 1196 (10th Cir. 2021); then citing *Rivera v. City & Cnty. of Denver*, 365 F.3d 912, 922 (10th Cir. 2004) ("Comparison of one disciplinary action with another ordinarily is relevant only to show *the bias of the person who decided* upon the disciplinary action.") (emphasis added)). In this case, the Chief of Staff recommended Dr. Schacht's suspension and termination, and the Director formally suspended and terminated Dr. Schacht. Thus, both individuals were decision-makers.

However, Defendant notes that each of the approximately 300 physicians at the Medical Center fell under the supervision of the Chief of Staff and Director. He emphasizes that expanding the scope of discovery to encompass all physicians at the Medical Center would require Defendant to run through hundreds of thousands, if not millions, of documents and thus would not be proportional to the needs of this case and would impose an undue burden. The court agrees that such broad discovery would be disproportional and that some limitations are necessary to assure proportionality and avoid imposing an undue burden on Defendant. To that end, as delineated below, the court has cabined many of the written discovery requests to information or documents relating to surgeons or anesthesiologists—persons who, like Dr.

Schacht would execute their primary duties in a surgical setting—and who worked at the

Medical Center during the applicable period.

      ***Time period.*** Dr. Schacht originally asked that Defendant produce information from

January 1, 2015, through the present, but has now limited her requests to information generated

between January 1, 2015, and August 20, 2020 (two years after Dr. Schacht was terminated).

Defendant produced information encompassing the period from January 1, 2015, through

December 31, 2018. Thus, the issue before the court is the end date for the discovery. Crucially,

Defendant represented at the discovery conference that Dr. Mangione left her position sometime

in 2018 and that Ms. Houser-Hanfelder left her position several months later, in early-to-mid

2019. Consistent with the foregoing analysis, any decisions made by the Chief of Staff's and the

Director's successors are not relevant to Dr. Schacht's claims. Accordingly, the court finds that

the time period for discovery must extend only to Sallie Houser-Hanfelder's last day as Director

of the Medical Center.[3]

      ***Comparators based on performance and conduct.*** Dr. Schacht argues that she is entitled

to discover information regarding physicians accused of "comparably serious[ ] performance

issues and/or similar or more egregious conduct." JDS at 3. Defendant responds that much of the

conduct on which Dr. Schacht seeks discovery is of a materially different nature than the conduct

that led to her termination. Again, the parties' arguments lie at a high level of generality, leading

to difficulties for the court in making specific determinations regarding the proper scope of

---

[3] The exact date of Ms. Houser-Hanfelder's departure is unclear from the record before the court.
However, the court expects that the parties already know the precise date or, if not, should be
able to be able to work together and agree on that date.

discovery. The court has endeavored to apply the operative legal principles in the specific context required for each discovery request, as reflected in the rulings below.

*Previous supervisors.* In several discovery requests, Dr. Schacht seeks information from, or relating to, her previous supervisors: Drs. Rai and Shockey. She submits that the VA relied on the comments and evaluations of these physicians in weighing whether to take adverse actions against her. Defendant responds only that Drs. Rai and Shockey were not decision-makers, and thus information relating to them is not relevant. JDS at 8. The court finds that this information may have some relevance and therefore will permit discovery relating to Drs. Rai and Shockey. *See Iweha v. State of Kansas*, 121 F.4th 1208, 1227-28 (10th Cir. 2024) (explaining the "cat's paw" theory of liability, which allows a plaintiff to show discrimination when an individual who, although not a decision-maker, is a subordinate of the decision-maker and "performs an act motivated by discriminatory animus that is *intended* by the subordinate to cause an adverse employment action, and that act is a proximate cause of the ultimate employment action") (cleaned up) (emphasis in original); *see also, e.g.*, *Nagel v. DFL Pizza, LLC*, No. 21-cv-00946-DDD-SBP, 2024 WL 5095296, at *1 (D. Colo. Nov. 25, 2024) ("Relevance under Rule 26(b)(1) is broadly construed in relation to discovery, and a request is considered relevant if there is 'any possibility' that the information sought may be relevant.") (citing *Standon v. Encompass Indem. Co.*, No. 12-cv-00801-PAB-KLM, 2013 WL 2423094, at *2 (D. Colo. June 4, 2013) (cleaned up)).

## II.    Modified Written Discovery Requests

Consistent with the analysis above, the court cabins the disputed written discovery

requests and directs Defendant to respond to the requests as modified below.[4] Defendant shall be

required to produce only that information and those records in the VA's possession, custody, or

control.

**INTERROGATORY No. 1:** Please identify and describe in detail, consistent with the

Definitions and Instructions set forth above, each and every instance (Instruction No. 7) **between**

**January 1, 2015, and Sallie Houser-Hanfelder's last day as the Medical Center[5] Director** in

which the Agency initiated, requested, commissioned, or conducted an investigation (Definition

No. 6) into the performance and/or conduct of a **Medical Center surgeon/anesthesiologist**

based on an allegation that the **surgeon/anesthesiologist** engaged in unprofessional conduct

and/or provided improper patient care.

The Agency's response must include, but is not limited to: identifying the

**surgeon/anesthesiologist** who was investigated, the individual(s) who initiated, requested,

commissioned and/or conducted the investigation, and the dates of the investigation; and it must

describe the investigation, the allegations investigated, and the results of the investigation.

**INTERROGATORY No. 2:** Please identify and describe in detail, consistent with the

Definitions and Instructions set forth above, each and every instance (Instruction No. 7) **between**

January 1, 2015, **and Sallie Houser-Hanfelder's last day as the Medical Center Director** in

which the Agency proposed and/or decided to take one or more disciplinary actions (Definition

No. 3) against a **Medical Center surgeon/anesthesiologist** based on an allegation that the

---

[4] Modifications are denoted in boldface type for ease of reference.
[5] The court uses the term "Medical Center" to refer to the Rocky Mountain Regional VA
Medical Center.

**surgeon/anesthesiologist** engaged in unprofessional conduct and/or provided improper patient care.

The Agency's response must include, but is not limited to: identifying the **surgeon/anesthesiologist** who was the subject of the disciplinary action, the individual(s) who proposed and/or decided the disciplinary action, and the date of the disciplinary action(s); and it must describe the performance and/or conduct that led to the disciplinary action and the type of disciplinary action proposed and/or taken.

**INTERROGATORY No. 3:** Please identify and describe in detail, consistent with the Definitions and Instructions set forth above, each and every instance (Instruction No. 7) **between** January 1, 2015, **and Sallie Houser-Hanfelder's last day as the Medical Center Director** in which an Agency employee has made or filed a grievance; state or federal court complaint; Unfair Labor Practice ("ULP") charge; informal or formal EEO complaint; or a Merit Systems Protection Board appeal against the Agency alleging that any of the following individuals discriminated or retaliated against them on the basis of sex, disability or prior protected activity: Sallie Houser-Hanfelder, Dr. Ellen Mangione, Dr. Harold Dillon, Dr. Ian Black, Dr. Gurdev Rai; Dr. Sean Shockey.

The Agency's response must include, but is not limited to: identifying the employee who made or filed the grievance, complaint, etc., the individual(s) alleged to have engaged in discrimination or retaliation, and the date of the grievance, complaint, etc.; and it must describe the alleged discriminatory or retaliatory treatment or action, the outcome of the grievance, complaint, etc. and, if not yet resolved, the current status of the same.

**INTERROGATORY No. 4:** Please identify and describe in detail, consistent with the

Definitions and Instructions set forth above, each and every instance (Instruction No. 7) **between** January 1, 2015, **and Sallie Houser-Hanfelder's last day as the Medical Center Director** in which the Agency, the EEOC, the MSPB, any other administrative tribunal or a state or federal court has determined or decided that one or more of the following individuals engaged in discrimination and/or retaliation: Sallie Houser-Hanfelder, Dr. Ellen Mangione, Dr. Harold Dillon, Dr. Ian Black, Dr. Gurdev Rai; Dr. Sean Shockey.

The Agency's response must include, but is not limited to: identifying the individual(s) who were found to have engaged in discrimination or retaliation, the identity of the tribunal, and the date of the decision, finding or ruling; and it must describe the discriminatory or retaliatory treatment or action at issue and the decision, ruling or finding issued.

**INTERROGATORY No. 7:** Please identify and describe in detail, consistent with the Definitions and Instructions set forth above, each and every instance (Instruction No. 7) **between** January 1, 2015, **and Sallie Houser-Hanfelder's last day as the Medical Center Director** in which the Agency has proposed and/or taken disciplinary action (Definition No. 3) against any of the following employees: Sallie Houser-Hanfelder, Dr. Ellen Mangione, Dr. Harold Dillon, Dr. Ian Black, Dr. Gurdev Rai; Dr. Sean Shockey.

The Agency's response must include, but is not limited to: identifying the individual who was the subject of the disciplinary action, the individual(s) who proposed and/or decided the disciplinary action, and the date of the disciplinary action(s); and it must describe the performance and/or conduct that led to the disciplinary action and the type of disciplinary action proposed and/or taken.

**INTERROGATORY No. 11:** Please identify and describe in detail, consistent with the

Definitions and Instructions set forth above, each instance (Instruction No. 7) **between** January 1, 2015, **and Sallie Houser-Hanfelder's last day as the Medical Center Director** in which the VA's Threat Assessment Team, any federal security service and/or any local law enforcement office appeared at ECHCS or RMR VAMC in response to a request for assistance based on the conduct or behavior of a **Medical Center** physician.

The Agency's response must include, but is not limited to identifying: each **Medical Center** physician whose conduct or behavior was the reason for the appearance, the individual(s) who reported the physician to the responders (if known), the date of the incident at issue; and it must describe the physician's conduct or behavior, how the responder's appearance ended, and what (if any) disciplinary actions the Agency proposed or took as a result of the physician's conduct or behavior.

**INTERROGATORY No. 12:** Please identify and describe in detail, consistent with the Definitions and Instructions set forth above, each and every incident (Instruction No. 7) reported to any member of the Agency's personnel, human resources and/or labor relations offices **between** January 1, 2015, **and Sallie Houser-Hanfelder's last day as the Medical Center Director** in which a **Medical Center surgeon/anesthesiologist** was alleged to have engaged in erratic, violent, disruptive, abusive, threatening, offensive and/or discourteous conduct or behavior.

The Agency's response must include, but is not limited to identifying: each **surgeon/anesthesiologist** whose conduct or behavior was the subject of the report, the individual(s) who reported the **surgeon/anesthesiologist** (if known), the date of the incident at issue; and it must describe the **surgeon/anesthesiologist** (if known), the date of the incident at

issue; and it must describe the **surgeon/anesthesiologist's** conduct or behavior.

> **INTERROGATORY No. 13:** ~~Please identify and describe in detail, consistent with the Definitions and Instructions set forth above, each and every intraoperative patient death which occurred between January 1, 2015 and the present, and for each such death identify the physician(s) involved, the date of death, the patient's name or pseudonym, and describe any Agency investigation (Definition No. 6) into the death, the results of such investigation, and any disciplinary action (Definition No. 3) the Agency proposed and/or took against a physician as a result of the death and/or the investigation.~~

Interrogatory #13 is **stricken in its entirety**. It is largely duplicative of other discovery requests and therefore not proportional to the needs of the case. Dr. Schacht has requested information in Interrogatory #1 that relates to instances where a Medical Center physician "provided improper patient care." Requesting information regarding "each and every" intraoperative patient death would lead to relevant information only if a Medical Center physician were suspected of providing improper care. Thus, this interrogatory is overinclusive and seeks information already called for in Interrogatory #1, which is more carefully tailored to eliciting information that may be relevant to this case.

> **INTERROGATORY No. 14:** ~~Please identify and describe in detail, consistent with the Definitions and Instructions set forth above, each and every malpractice claim, compliant or lawsuit filed against the Agency and/or one or more Agency physicians between January 1, 2015 and the present, and for each such claim, complaint or lawsuit: identify the physician(s) involved, the date of the alleged malpractice, the patient's name or pseudonym and the harm alleged; and describe any Agency investigation (Definition No. 6) into the alleged malpractice,~~

10

~~the results from any such investigation, the outcome of the claim or lawsuit, and any disciplinary~~

~~action (Definition No. 3) the Agency proposed or took against any physician as a result of the~~

~~malpractice, investigation, claim, complaint or lawsuit.~~

Interrogatory #14 is **stricken in its entirety**. First, for reasons similar to the court's

analysis of Interrogatory #13, information regarding complaints of malpractice would almost

certainly be produced in response to Interrogatory #1. Second, the court finds that the

interrogatory poses an undue burden by requiring Defendant to compile and produce information

from publicly filed lawsuits.

**INTERROGATORY No. 15:** ~~Please identify and describe in detail, consistent with the~~

~~Definitions and Instructions set forth above, each and every instance (Instruction No. 7) between~~

~~January 1, 2015 and the present in which the Agency selected and sent some of a physician's~~

~~cases out for external review and for each such instance identify: the physician whose cases were~~

~~sent out for review; the individual(s) who requested the review; the date the cases were sent out~~

~~for review; the individual(s) to whom the cases were sent; and describe the reasons for the~~

~~external review, the results of the review and any actions taken or decision made by the Agency~~

~~as a result of the review.~~

Interrogatory #15 is **stricken in its entirety** in light of the court's order dismissing Dr.

Schacht's hostile work environment claim. ECF No. 71; *see also* ECF No. 70 at 11 (noting that

Dr. Schacht's allegations regarding cases being sent out for external review were raised only "as

part of her hostile environment claim"). To the extent that information regarding other instances

of cases sent out for external review retains some modicum of relevance, requiring the

production of this information would not be proportional to the needs of the case and may be responsive to Interrogatory #1 in any event.

**INTERROGATORY No. 16:** Please identify, consistent with Instruction No. 5, each and every **Medical Center surgeon/anesthesiologist** who, **between** January 1, 2015, **and Sallie Houser-Hanfelder's last day as the Medical Center Director** was the subject of one or more student complaints and for each such **surgeon/anesthesiologist**, state the number of student complaints made, the date of each complaint and describe in detail what action, if any, the Agency took after learning of the complaint(s).

**INTERROGATORY No. 17:** Please identify, consistent with Instruction No. 5, each and every **Medical Center surgeon/anesthesiologist** who**, between** January 1, 2015, **and Sallie Houser-Hanfelder's last day as the Medical Center Director,** was informed they would no longer be allowed to supervise students and for each such **surgeon/anesthesiologist**, identify the individual(s) who made the decision, when the decision was made, and describe in detail what, if any, consequences that decision had on the **surgeon/anesthesiologist's** performance evaluations, disciplinary record and continued employment with the Agency.

**INTERROGATORY No. 18:** Please identify and describe in detail, consistent with the Definitions and Instructions set forth above, each and every Patient Safety Report, Report of Contact, complaint or grievance the Agency received **between** January 1, 2015, **and Sallie Houser-Hanfelder's last day as the Medical Center Director,** with respect to the performance or conduct of any of the following physicians: Dr. Daniel Beck; Dr. Wayne Soong; Dr. Carlton Barnett; Dr. Douglas Semian; Dr. Christopher Frandrup; Dr. Mario Villaseñor; Dr. Sean Shockey; Dr. John Eun; Dr. Phillip Pian; and Dr. Peter Sotille.

**INTERROGATORY No. 19:** Please identify and describe in detail, consistent with the Definitions and Instructions set forth above, each and every disciplinary action (Definition No. 3) the Agency proposed and/or decided to take **between** January 1, 2015, **and Sallie Houser-Hanfelder's last day as the Medical Center Director,** with respect to the performance or conduct of any of the following physicians: Dr. Daniel Beck; Dr. Wayne Soong; Dr. Carlton Barnett; Dr. Douglas Semian; Dr. Christopher Frandrup; Dr. Mario Villaseñor; Dr. Sean Shockey; Dr. John Eun; Dr. Phillip Pian; and Dr. Peter Sotille.

**REQUEST FOR PRODUCTION No. 1:** Please produce for inspection and/or copying all correspondence, notes, reports, statements, whether handwritten or otherwise made, by Sallie Houser-Hanfelder, Dr. Ellen Mangione, Dr. Harold Dillon, Dr. Ian Black, Dr. Gurdev Rai, Dr. Sean Shockey, Dr. Vesna Todorovic, and/or Dr. Anthony Oliva) **between** January 1, 2015, **and Sallie Houser-Hanfelder's last day as the Medical Center Director,** which refer to and/or name Dr. Elizabeth Schacht.

**REQUEST FOR PRODUCTION No. 2:** Please produce for inspection and/or copying all **emails** to, from, by, between or among any of the following individuals, from **between** January 1, 2015, **and Sallie Houser-Hanfelder's last day as the Medical Center Director,** which **include the term "Dr. Elizabeth Schacht" or some iteration thereof** : Sallie Houser-Hanfelder, Dr. Ellen Mangione, Dr. Harold Dillon, Dr. Ian Black, Dr. Gurdev Rai, Dr. Sean Shockey, Dr. Vesna Todorovic, and/or Dr. Anthony Oliva.

**REQUEST FOR PRODUCTION No. 3:** Please produce for inspection and copying all **emails between** January 1, 2015, **and Sallie Houser-Hanfelder's last day as the Medical Center Director,** that refer or pertain to any concerns raised regarding the conduct, job

13

performance and/or care provided by the following physicians, including but not limited to:
letters of concern or expectations issued to the providers; emails or other correspondence the
Agency received pertaining to complaints or concerns about the conduct, job performance and/or
care provided by such providers; any disciplinary actions (Definition No. 3) proposed, decided,
and/or taken against such providers and any supervisor's, management's and/or any HR/Labor
Relations files kept on these employees: Dr. Daniel Beck; Dr. Wayne Soong; Dr. Carlton Barnett;
Dr. Douglas Semian; Dr. Christopher Frandrup; Dr. Mario Villaseñor; Dr. Sean Shockey; Dr.
John Eun; Dr. Phillip Pian; and Dr. Peter Sotille.

**REQUEST FOR PRODUCTION FOR No. 5:** Please produce for inspection and
copying the position descriptions in effect for each of the following physicians **between** January
1, 2015, **and Sallie Houser-Hanfelder's last day as the Medical Center Director**: Dr. Daniel
Beck; Dr. Wayne Soong; Dr. Carlton Barnett; Dr. Douglas Semian; Dr. Christopher Frandrup; Dr.
Maria Villaseñor; Dr. Sean Shockey; Dr. John Eun; Dr. Phillip Pian, and Dr. Peter Sotille.

**REQUEST FOR PRODUCTION No. 6:** ~~Please produce for inspection and copying the
Employee Performance File (however denominated, which contains the employee's performance
evaluations), their disciplinary file (however denominated, which contains records of any
disciplinary actions proposed and/or taken against them), and every Agency supervisor's file
pertaining to the following physicians (however denominated, which file was created or
maintained by their supervisors): Dr. Daniel Beck; Sr. Wayne Soong; Dr. Carlton Barnett; Dr.
Douglas Semian; Dr. Christopher Frandrup; Dr. Mario Villaseñor; Dr. Sean Shockey; Dr. John
Eun; Dr. Phillip Pian; and Dr. Peter Sotille.~~

RFP #6 is stricken as duplicative. Most of the relevant information called for in RFP #6 is

14

already demanded in RFP #3. Accordingly, the court concludes that production of the personnel files for the identified individuals would not be proportional to the needs of the case. *See Regan-Touhy v. Walgreen Co.*, 526 F.3d 641, 649 (10th Cir. 2008) ("[H]ad Ms. Touhy issued a more narrowly targeted request focused only on documents (whether from the personnel file or elsewhere) that might indicate disciplinary action against Ms. Whitlock after Ms. Touhy filed suit, we would face a very different question.").

## III.    Conclusion

The parties are respectfully **ORDERED** to comply with the discovery parameters set forth above. The parties shall file a status report by **May 12, 2025**, indicating the anticipated timeline for completing the discovery set forth in this Order and any required extensions of the overall case schedule.[6]

DATED: April 27, 2025                    BY THE COURT:

_____
Susan Prose
United States Magistrate Judge

---

[6] Rule 72 of the Federal Rules of Civil Procedure provides that within fourteen (14) days after service of a Magistrate Judge's order or recommendation, any party may serve and file written objections with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. §§ 636(b)(1)(A), (B); Fed. R. Civ. P. 72(a), (b). Failure to make any such objection will result in a waiver of the right to appeal the Magistrate Judge's order or recommendation. *See Sinclair Wyo. Ref. Co. v. A & B Builders, Ltd.*, 989 F.3d 747, 783 (10th Cir. 2021) (firm waiver rule applies to non-dispositive orders); *but see Morales-Fernandez v. INS*, 418 F.3d 1116, 1119, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review, including when a "pro se litigant has not been informed of the time period for objecting and the consequences of failing to object").