IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Case No. 23-cv-00709-PAB-SBP

ELIZABETH SCHACHT, M.D.,

    Plaintiff,

v.

DOUGLAS A. COLLINS, Secretary, U.S. Department of Veterans Affairs,[1]

    Defendant.

_____

**ORDER**
_____

This matter is before the Court on Defendant's Motion to Exclude Opinions of Dr. Mercedes Susan Mandell Under Federal Rules of Evidence 702, 401, and 403 [Docket No. 92]. Plaintiff Elizabeth Schacht ("Dr. Schacht") filed a response. Docket No. 99. Defendant Denis R. McDonough, sued in his official capacity as the Secretary of the United States Department of Veteran Affairs (the "VA"), filed a reply. Docket No. 104. The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

**I.  BACKGROUND**

Dr. Schacht was employed by the VA as an anesthesiologist at the VA's Eastern Colorado Health Care System ("ECHCS") in Aurora, Colorado from March 2015 until August 20, 2018. Docket No. 29 at 2-3, 6, ¶¶ 6-7, 12, 26. Dr. Schacht has been licensed to practice medicine since 2010 and is triple board certified in anesthesiology, critical care medicine, and advanced perioperative transesophageal echocardiography.

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Secretary Collins is automatically substituted as the defendant as the current United States Secretary of Veterans Affairs

*Id*. at 5-6, ¶ 25.  Dr. Schacht is female and is originally from Colombia.  *Id*. at 3, ¶¶ 10-11.

On August 1, 2018, ECHCS Chief of Staff Dr. Ellen Mangione sent Dr. Schacht a notice of proposed removal and revocation of her clinical privileges.  *See* Docket No. 99-1.  In the notice, Dr. Mangione charged Dr. Schacht with unprofessional conduct and relied upon eight "specifications" or instances of such conduct.  *Id.* at 1-2.  On August 14, 2018, Dr. Schacht provided a verbal and written response to the notice.  Docket No. 29 at 16, ¶ 87.  On August 20, 2018, Dr. Mangione sent Dr. Schacht a letter informing her that the decision was made to terminate Dr. Schacht's employment and revoke her clinical privileges, citing the specifications that were sustained in support of the decisions.  *See* Docket No. 99-2 at 1.  Dr. Schacht appealed her termination and the revocation of her clinical privileges to the VA Disciplinary Appeals Board (the "DAB").  Docket No. 29 at 16, ¶ 89.  In December 2019, the DAB heard Dr. Schacht's appeal and upheld the VA's decision.  *Id.*

Dr. Schacht appealed the DAB's decision to the United States District Court for the District of Columbia.  *See Doe v. Lieberman,* 2021 WL 4476748, (D.D.C. Sept. 30, 2021) ("*Doe I*").  Dr. Schacht challenged the sufficiency of the DAB's pre-hearing notice, *id.* at *5, the DAB's exclusion of Dr. Schacht's supplemental exhibits and expert testimony, and the decision to deny Dr. Schacht's request to cross-examine witnesses.  *Id.* at *7.  She also "rais[ed] several challenges to the DAB's reasoning and conclusions it reached."  *Id.* at *11.  *Doe I* found that "the DAB's failure to explain its evidentiary decisions regarding [Dr. Schacht's] supplemental exhibits and introduction of prior

2

sworn testimony requires remand under the statutory standards applicable to agency adjudications," but rejected the remainder of Dr. Schacht's challenges. *Id.* at *7, *13.

On August 11, 2022, after remand, the D.C. District Court found that the DAB provided a "sufficient, reasonable explanation" for its evidentiary decisions. *See Doe v. Lieberman,* 2022 WL 3576211, at *1 (D.D.C. Aug. 11, 2022) (*"Doe II"*). *Doe II* considered Dr. Schacht's argument that the DAB's decision was not supported by substantial evidence. *See id*. at *11. The Court rejected Dr. Schacht's challenge, finding that "the DAB generally comported with the relevant substantive standards, and that each individual specification is supported by substantial evidence in the record." *Id.* Dr. Schacht appealed *Doe II* to the United States Court of Appeals for the District of Columba Circuit. *See Schacht v. Lieberman,* 103 F.4th 794 (D.C. Cir. 2024). Dr. Schacht did not challenge *Doe II*'s finding that there was substantial evidence to support each specification, but rather "claim[ed] that the Board acted arbitrarily in refusing to admit some of her proposed evidence" and "argue[d] that the Board's decision was arbitrary and capricious because the Board did not sufficiently consider whether a penalty short of firing her would have been appropriate." *Id*. at 795. On June 4, 2024, the D.C. Circuit affirmed the judgment in *Doe II*. *Id.* at 798.

On March 20, 2023, Dr. Schacht filed this case. *See* Docket No. 1. In her amended complaint, Dr. Schacht asserts four claims arising out of her employment with the VA: (1) a disparate treatment claim and hostile work environment claim under Title VII of the Civil Rights Act of 1964 ("Title VII") for discrimination based on sex, pregnancy, and national origin; (2) a retaliation claim under Title VII; (3) a disability discrimination claim under the Americans with Disabilities Act ("ADA") and the

3

Rehabilitation Act; and (4) a retaliation claim under the ADA and the Rehabilitation Act. Docket No. 29 at 36-41, ¶¶ 161-186.

On February 29, 2024, the Court granted in part and denied in part the VA's motion for partial summary judgment.  Docket No. 70.  The Court dismissed without prejudice the portion of Dr. Schacht's first, second, third, and fourth claims that alleged the VA reported Dr. Schacht to the National Practitioner Database and the Colorado State Medical Board.  *Id.* at 22.  The Court dismissed without prejudice the portion of Dr. Schacht's second and fourth claims that alleged the VA retaliated against her for her filing an Equal Employment Opportunity complaint in 2016, for raising concerns about an internal investigation in 2017, and for raising concerns about the VA's failure to abide by the terms of a 2017 settlement agreement.  *Id.* at 22-23.  The Court dismissed without prejudice the portion of Dr. Schacht's fourth claim that alleged the VA retaliated against Dr. Schacht by failing to provide her with reasonable accommodations related to radiation exposure.  *Id.* at 23.

The VA also filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). Docket No. 37.  The Court granted in part and denied in part the VA's motion to dismiss. Docket No. 71.  The Court dismissed with prejudice the portion of Dr. Schacht's first claim that alleged a hostile work environment, the portion of her fourth claim that alleged retaliation under the ADA, and the portion of her third claim that alleged disability discrimination under the ADA.  *Id.* at 35.

II.     **LEGAL STANDARD**

Rule 702 of the Federal Rules of Evidence provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the

4

proponent demonstrates to the court that it is more likely than not that: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702; *see also Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 590–91 (1993). If challenged by a party opposing the testimony of an expert witness, "[Rule] 702 imposes upon the trial judge an important 'gate-keeping' function with regard to the admissibility of expert opinions." *Mathis v. Huff & Puff Trucking, Inc.*, 787 F.3d 1297, 1307 (10th Cir. 2015) (citation omitted). However, "[t]he proponent of expert testimony bears the burden of showing that its proffered expert's testimony is admissible." *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009). "[T]he proponent has the burden of establishing that the pertinent admissibility requirements are met by a preponderance of the evidence." *Id.* (quoting Fed. R. Evid. 702 advisory committee's note (2000)).

To determine whether an expert opinion is admissible, the court must perform "a two-step analysis." *Roe v. FCA US LLC*, 42 F.4th 1175, 1180 (10th Cir. 2022); *see also 103 Investors I, L.P. v. Square D Co.*, 470 F.3d 985, 990 (10th Cir. 2006). First, the court must determine whether the expert is qualified by "knowledge, skill, experience, training, or education" to render an opinion. *Roe*, 42 F.4th at 1180 (quoting Fed. R. Evid. 702).

Second, if the expert is sufficiently qualified, the proffered opinions must be assessed for reliability. *Id.* at 1180–81; Fed. R. Evid. 702(b)–(d) (requiring that the testimony be "based on sufficient facts or data," be the "product of reliable principles and methods," and reflect a reliable application of "the principles and methods to the

facts of the case"). To perform that function, a court must "assess the reasoning and methodology underlying the expert's opinion, and determine whether it is both scientifically valid and applicable to a particular set of facts." *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1221 (10th Cir. 2003) (citing *Daubert*, 509 U.S. at 592–93). "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Roe*, 42 F.4th at 1181. "[T]he trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

Under Rule 702, a court must also ensure that the proffered testimony is relevant and will assist the trier of fact. *See id.* at 156; *United States v. Rodriguez-Felix*, 450 F.3d 1117, 1122–23 (10th Cir. 2006). "Relevant expert testimony must logically advance[] a material aspect of the case and be sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *United States v. Garcia*, 635 F.3d 472, 476 (10th Cir. 2011) (quotations and citations omitted). In assessing whether expert testimony will assist the trier of fact, a court should also consider "whether the testimony 'is within the juror's common knowledge and experience,' and 'whether it will usurp the juror's role of evaluating a witness's credibility.'" *Id.* at 476–77 (quoting *Rodriguez-Felix*, 450 F.3d at 1123).

Finally, Federal Rule of Evidence 403 permits a court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of

6

the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

## III. ANALYSIS

The VA seeks to exclude the opinions of one of Dr. Schacht's experts, Dr. Mercedes Susan Mandell, an anesthesiologist. *See* Docket No. 92. Dr. Mandell wrote a report in this case dated April 1, 2024. Docket No. 92-1. Dr. Mandell's report has four "objectives;" (1) "to determine if Dr. Schacht met the standard of care and if the cases supported the VA's claims of unprofessional behavior;" (2) "if the disciplinary investigation and actions followed policy published by the VA;" (3) "the quality and reliability of the claims made against Dr. Schacht;" and (4) "if the actions taken against Dr. Schacht were consistent with the standards of clinical care and professional conduct enforced by state organizations responsible for medical licensing (Medical Board)". *See id.* at 2.

The Court first turns to the VA's argument that Dr. Mandell's report should be excluded because her opinions are barred by collateral estoppel, also known as issue preclusion. *See* Docket No. 92 at 6. The VA argues that Dr. Mandell's opinions should be excluded on the basis of issue preclusion because "Dr. Mandell addresses an issue already decided; the DAB action has now been finally adjudicated on the merits; Plaintiff was a party in the DAB and the appeals; and she had a full and fair opportunity to litigate." *Id.*

Dr. Schacht argues that Dr. Mandell's opinions are not subject to issue preclusion because the DAB proceedings "did not, and in fact could not, include Dr. Schacht's discrimination claims." *See* Docket No. 99 at 7. She contends that she did

7

not have a "full and fair opportunity to litigate her discrimination claims" in the DAB proceedings because the DAB "refused to admit evidence pertaining to Dr. Schacht's discrimination case." *See id.*

Under the doctrine of issue preclusion, "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe v. Swenson*, 397 U.S. 436, 443 (1970). "[I]ssue preclusion bars a party from relitigating an issue once it has suffered an adverse determination on the issue, even if the issue arises when the party is pursuing or defending against a different claim." *Park Lake Res. Ltd. Liab. v. U.S. Dep't of Agr.*, 378 F.3d 1132, 1136 (10th Cir. 2004) (citation omitted). It is designed to prevent parties from wasting time and resources, and to discourage losing parties from shopping around for a different court. *See B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 140 (2015). In general, issue preclusion applies when: (1) the issue previously decided is identical to the one presented in the action in question; (2) the prior action has been finally adjudicated on the merits; (3) the party against whom the doctrine is invoked was a party to, or in privity with, a party to the prior adjudication; and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action. *Park Lake*, 378 F.3d at 1136; *see also Stan Lee Media, Inc. v. Walt Disney Co.*, 774 F.3d 1292, 1297 (10th Cir. 2014).

As an initial matter, Dr. Schacht does not address the second and third elements of issue preclusion, which concern whether the DAB proceedings have been fully adjudicated on the merits and whether Dr. Schacht was a party to those proceedings. *See* Docket No. 99 at 7. The Court finds that the DAB proceedings have been fully

8

adjudicated because the D.C. District Court affirmed the DAB's findings and the D.C. Circuit affirmed the D.C. District Court's judgment.  *See Doe II*, 2022 WL 3576211, at *16; *Schacht*, 103 F.4th at 798.  Furthermore, Dr. Schacht was a party to the DAB proceedings.

Therefore, the Court will determine, for each of Dr. Mandell's opinions, whether the issue that is the subject of her opinions was identical to the issue presented in the DAB proceedings, and whether she had a full and fair opportunity to litigate the issue in the DAB proceedings.  *See id.*

In a section entitled "Objective 1: Specifications," Dr. Mandell's report "examine[s] the claims described in the specifications . . . to determine if Dr. Schacht met the standard of care and if the cases supported the VA's claims of unprofessional behavior."  *See* Docket No. 92-1 at 2-11.  In *Doe II*, the court considered whether the DAB's findings – that each specification demonstrated instances of Dr. Schacht's unprofessional conduct – were supported by substantial evidence.  *See Doe II*, 2022 WL 3576211, at *12.  The court found that the DAB's findings were supported.  *See id*. The Court finds Dr. Mandell's opinions – that the specifications do not support the VA's claims that Dr. Schacht engaged in unprofessional conduct – are identical to the issues decided in the DAB proceedings.  Dr. Mandell's report attempts to resurrect these issues by opining that Dr. Schacht did not breach the standard of care and by providing additional facts that allegedly show that Dr. Schacht's conduct was not unprofessional. *See* Docket No. 92-1 at 3-11.

For instance, specification one alleges that, on February 9, 2018, Dr. Schacht "placed an arterial line without appropriate evaluation and assessment, without

9

confirming through additional readings or physical exam the patient's vital signs, and without appropriate communication with other staff." Docket No. 99-1 at 1. *Doe II* held that there was substantial evidence, in the form of testimony from a Certified Registered Nurse Anesthetist ("CRNA") present during the February 9, 2018 incident, to support this specification. *Doe II*, 2022 WL 3576211, at *12. The CRNA testified that Dr. Schacht did not have a "necessary conversation" with him regarding the "correct approach with the patient." *Id*. *Doe II* found that this testimony, coupled with the CRNA's testimony that Dr. Schacht "had an ongoing pattern of poor communication[] skills" which "bolstered" the DAB's "well-supported conclusion that [Dr. Schacht] acted unprofessionally in this instance," constituted substantial evidence. *Id.* Dr. Mandell attacks this finding by opining that "[t]here is insufficient evidence to support the allegations of improper communication. *See* Docket No. 92-1 at 4. Specifically, she opines that it was likely there was an "urgent need for action" on February 9, 2018, that "may have precluded a full discussion with the CRNA about the reasoning for a change in the anesthesia plan." *See id*. Dr. Mandell further concludes that Dr. Schacht abided by the standard of care in placing an arterial line, the CRNA was unfamiliar with such standard of care, and therefore there is no evidence that Dr. Schacht acted unprofessionally. *See id.* at 3-5.

Specification four alleges that, on January 29, 2018, Dr. Schacht entered a room where "fluoroscopy was in use without lead protection" and "demanded that the fluoroscopy be ceased during the procedure." *See* Docket No. 99-1 at 1. The specification alleges that the reason Dr. Schacht entered the room "involved another case." *Id.* Therefore, in specification four, the VA "charged" Dr. Schacht with "violat[ing]

10

the standard of care." *See Doe II*, 2022 WL 3576211, at *12. *Doe II* held that Dr. Schacht's argument – that her conduct was justified because she was experiencing a high-risk pregnancy and therefore could not protect herself with a lead shield – "addresses only a small portion of the factual predicate for Specification 4; it does not undermine the evidence in the record that [Dr. Schacht] should not have entered the procedure room in the first place, nor the manner in which she communicated her request to stop the fluoroscopy." *See id*. at *13. *Doe II* found that Dr. Schacht's concessions at the DAB hearing that "she had entered the room to retrieve papers related to another patient, that she had inadvertently 'walked in at a bad time,' and that her alarm at the situation may have led her to 'c[o]me across as demanding'" "form part of the substantial evidence supporting Specification 4." *See id*. (internal citation omitted). Dr. Mandell's report reaches a different conclusion, opining that Dr. Schacht did not act unprofessionally because "Dr. Schacht was pregnant with a condition . . . that poses increased risk to the mother and fetus" and it was "essential to stop the radiation exposure to Dr. Schacht," even if "it may have been inconvenient for the physician." *See* Docket No. 92-1 at 7. Dr. Mandell further noted that specification four does not constitute unprofessional conduct because there is no evidence that there were warning signs indicating fluoroscopy was in use, and that another doctor continued to assign Dr. Schacht to operations where radiation was in use, despite knowledge of her high-risk pregnancy. *See id.*

For each specification, Dr. Mandell's report conducts a similar analysis that relitigates the issue of whether there was substantial evidence to support the specifications and, by extension, the VA's charge of unprofessional conduct. *See*

11

Docket No. 92 at 3-11.  Therefore, the Court finds that Dr. Mandell's opinions and the DAB proceedings involve identical issues.

The Court turns to Dr. Schacht's argument that she did not have "a full and fair opportunity to litigate her discrimination claims . . . because the Board refused to admit evidence pertaining to Dr. Schacht's discrimination case."  Docket No. 99 at 7.  Whether Dr. Schacht had a full and fair opportunity to litigate her discrimination claims, while relevant to claim preclusion, *see MACTEC, Inc. v. Gorelick*, 427 F.3d 821, 831 (10th Cir. 2005) (claim preclusion "is appropriate unless the party seeking to avoid preclusion did not have a 'full and fair opportunity' to litigate the claim in the prior suit"), is not relevant to the inquiry under issue preclusion.  Here, the VA seeks issue preclusion, not claim preclusion.  *See* Docket No. 92 at 6 ("Dr. Mandell addresses an issue already decided; the DAB action has now been fully adjudicated on the merits, Plaintiff was a party in the DAB and the appeals; and she had a full and fair opportunity to litigate."); *see also* Docket No. 104 at 4 ("Plaintiff's focus on discrimination goes to claim preclusion, not issue preclusion.").

For purposes of determining whether issue preclusion applies, the relevant question is whether Dr. Schacht had a full and fair opportunity to litigate the issue of there being substantial evidence to support the specifications.  *See Stan Lee Media, Inc.*, 774 F.3d at 1297.  The "consideration of a party's prior full and fair opportunity to litigate an issue often will focus on whether there were significant procedural limitations in the prior proceeding, whether the party had the incentive to litigate fully the issue, or whether effective litigation was limited by the nature or relationship of the parties."  *Id*. (internal quotations, alterations, and citation omitted).  Dr. Schacht does not point to any

12

Case No. 1:23-cv-00709-PAB-SBP   Document 129   filed 09/24/25   USDC Colorado
 pg 13 of 18

procedural limitations in the DAB proceedings that constrained her ability to challenge the evidence that the DAB relied on.  Furthermore, there is nothing in the record to suggest that the parties did not have an incentive to litigate the issue fully or that effective litigation was limited by the nature or relationship of the parties.

To the extent that Dr. Schacht argues that she did not have a full and fair opportunity to litigate whether substantial evidence supported the specifications because she could not introduce supplemental evidence in the DAB proceedings, the Court rejects that argument.  The DAB explained, after remand in *Doe II*, that it excluded Dr. Schacht's supplemental evidence because it was untimely and the evidence was not relevant.  *See Doe II*, 2022 WL 3576211, at *3.  *Doe II* upheld the DAB's decision to exclude the supplemental evidence for being untimely, and found that, even if the DAB had considered the supplemental evidence, Dr. Schacht failed to establish that "any of it could have affected the DAB's outcome."  *Id.* at *8.  Specifically, *Doe II* found that "several of the documents did not even contain new evidence, either because they contained no evidence at all or duplicated material already in the record," and "[s]everal more were of at most minimal relevance to the charges of unprofessional conduct under review by the DAB, as they concerned [Dr. Schacht's] work before the relevant time period or were disconnected from the specific incidents at issue in the hearing."  *Id.*  While acknowledging that some of the supplemental evidence was "at least arguably relevant to the DAB's consideration – to cast doubt on whether she committed the alleged misconduct," *Doe II* nonetheless concluded that it was harmless error not to admit the relevant evidence because "the DAB heard ample evidence of both [Dr. Schacht's] competent performance and the substance of her disputes with

13

others in the Department." *Id.* at *8-9.  *Doe II* found that the DAB "did not fail to account for any allegedly improper motivation when it independently reviewed the agency's decision to remove [Dr. Schacht] from service." *Id.* at *11.  In light of *Doe II's* determination that the supplemental evidence would not have impacted the DAB's decision, the Court does not find that Dr. Schacht was deprived of a full and fair opportunity to litigate the issue of whether there was substantial evidence to support the specifications and the charge of unprofessional conduct.

The remainder of Dr. Mandell's report, entitled "Objective 2," *see* Docket No. 92-1 at 11-17, is also subject to preclusion.  In this section, Dr. Mandell opines on "if the disciplinary investigation and actions followed policy published by the VA; the quality and reliability of the claims made against Dr. Schacht; and if the actions taken against Dr. Schacht were consistent with standards of clinical care and professional conduct enforced by state organizations."  *See id.* at 2.

Regarding Dr. Mandell's opinions on whether the VA adhered to VA disciplinary policies and procedures, Dr. Mandell states that her opinions were principally based on VA Directives 5013, "Performance Management Systems," and VA Directive 5021, "Employee/Management Relations."  *See id.* at 11.  However, whether the VA adhered to its directives was an issue litigated in the DAB proceedings.  *Doe I* noted that Dr. Schacht "argue[d] that the DAB's decision . . . did not comply with internal VA directives."  *Doe I*, 2021 WL 4476748, at *3.  In particular, *Doe I* found that the VA complied with VA Directive 5021 and therefore rejected Dr. Schacht's argument that "the DAB process failed to provide her with full notice of the allegations against her and the evidence supporting them, in violation of her right to due process and a directive in

14

the VA Handbook governing pre-termination procedures." *Id.* at *5. *Doe I* further found that the VA complied with a directive that required it to give Dr. Schacht the opportunity to present evidence of her medical condition, where she raised it as a defense to the misconduct charge. *Id.* at *12. Dr. Mandell's opinion that the charge against Dr. Schacht did not warrant termination and revocation of her clinical privileges, but a lesser sanction, *see* Docket No. 92-1 at 15-17, was also an issue litigated in the context of whether the VA adhered to VA directives.[2] *See Doe I*, 2021 WL 4476748, at *12 ("[Dr. Schacht's] next argument is that the agency violated VA Directive 5013 by failing to put

---

[2] Dr. Mandell opines that the VA's discipline of Dr. Schacht for unprofessional conduct was inconsistent with how the U.S. Federal of Medical Boards defines "unprofessional" conduct, and that the VA "could also have referred Dr. Schacht to the Colorado Physicians Health Program" rather than terminating her employment. *See* Docket No. 92-1 at 16-17. The Court agrees with the VA that Dr. Mandell is not qualified to opine on whether the VA's disciplinary procedures complied with industry standards, *see* Docket No. 92 at 5-6, 9-10, 12-13, because there is no evidence that she has experience or training in conducting and directing internal investigations. Dr. Schacht does not point to any experience or training that Dr. Mandell received as an anesthesiologist that provides Dr. Mandell with the necessary knowledge to opine on the sufficiency of the VA's disciplinary procedures and internal investigation. The Court's review of Dr. Mandell's curriculum vitae shows no relevant experience. *Compare* Docket No. 99-3, *with Mueller v. Daugherty Sys., Inc.*, 2021 WL 3754582, at *3 (N.D. Ga. June 14, 2021) (finding that expert was "sufficiently qualified to offer expert testimony on the standards of internal investigations of human resources complaints and her assessment of Defendant's investigation" where the expert was an "attorney, mediator, neutral workplace investigator, and consultant with over 27-years of experience," "has conducted or directed more than 200 investigations with more than 40 companies into allegations of misconduct, including sexual harassment, retaliation, discrimination, and violations of company policies," and "has conducted or directed over 50 investigations into allegations of gender-based discrimination or disparate pay"), *and Ford v. Cnty. of Hudson*, 2014 WL 2039987, at *4, *5 (D.N.J. May 16, 2014) (holding that the expert was qualified to opine on "internal affairs and investigatory best practices" and whether law enforcement defendant "carried on a legitimate investigation" of plaintiff and "followed protocol" where the expert had a PhD in Human Resources Development, "25 years in law enforcement, and leadership in the field as Superintendent of Investigations for the New Jersey State Police" and "has also been published in the field of risk management and internal investigations"), *aff'd in part*, 729 F. App'x 188 (3d Cir. 2018).

15

her on a performance improvement plan. . . .  The Court easily rejects this claim because that directive does not apply to physician employees appointed under 38 U.S.C. § 7401(1), such as [Dr. Schacht].").

Finally, the Court turns to Dr. Mandell's opinions that the evidence supporting the specifications "lacks credibility" and that "[t]here were not enough facts to support the deficiency claims." See Docket No. 92-1 at 13.  In upholding the charge of unprofessional conduct against Dr. Schacht, the DAB necessarily decided that the evidence supporting the specifications was credible.  *Doe II* held that the DAB was within its discretion to deem evidence credible and find that there was sufficient support for the specifications.  See *Doe II*, 2022 WL 3576211, at *12-14.  Specifically, *Doe II* held that it was proper for the DAB to rely on the evidence it did in terminating Dr. Schacht's employment, such as testimony from health care professionals who worked with Dr. Schacht and find that Dr. Schacht's submitted evidence did not undermine the credibility of the VA's evidence.  See *id*.  Dr. Mandell opines that the credibility of the complaints against Dr. Schacht are suspect because other peers found that Dr. Schacht was competent in her role.  See, e.g., Docket No. 92-1 at 12, 16.  This issue was also litigated in the DAB proceedings.  See *Doe II*, 2022 WL 3576211, at *8-9 ("the DAB heard ample evidence of both [Dr. Schacht's] competent performance and the substance of her disputes with others in the Department").  Therefore, Dr. Mandell's opinions relitigate credibility determinations that were already made by the DAB and which were upheld on review in federal court.[3]

---

[3] Moreover, "the credibility of witnesses is generally not an appropriate subject for expert testimony." *United States v. Hill*, 749 F.3d 1250, 1258 (10th Cir. 2014) (alternation and citation omitted).  The "prohibition against expert testimony on other

16

The Court finds that Dr. Schacht had a full and fair opportunity to litigate these issues in the DAB proceedings. The "consideration of a party's prior full and fair opportunity to litigate an issue often will focus on whether there were significant procedural limitations in the prior proceeding, whether the party had the incentive to litigate fully the issue, or whether effective litigation was limited by the nature or relationship of the parties." *Stan Lee Media, Inc.*, 774 F.3d at 1297. The Court does not find, and Dr. Schacht does not point to, any significant procedural limitations in the DAB proceedings, a lack of incentive to litigate the issue fully, or that the nature or relationship of the parties limited effective litigation. *See id.* As a result, the Court finds that all of Dr. Mandell's opinions in her report, Docket No. 92-1, are precluded.

Because Dr. Mandell's opinions are barred by issue preclusion, the Court will grant the VA's motion to exclude the opinions in her report.

## IV. CONCLUSION

It is therefore

---

witness' credibility" exists because such testimony (1) "usurps a critical function of the jury; (2) is not helpful to the jury, which can make its own determination of credibility; and (3) when provided by impressively qualified experts on the credibility of other witnesses is prejudicial and unduly influences the jury." *Id*. (internal quotations and citation omitted).

**ORDERED** that Defendant's Motion to Exclude Opinions of Dr. Mercedes Susan Mandell Under Federal Rules of Evidence 702, 401, and 403 [Docket No. 92] is **GRANTED**.

DATED September 24, 2025.

BY THE COURT:

_____
PHILIP A. BRIMMER
Chief United States District Judge