**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 23-cv-00709-PAB-SBP

ELIZABETH SCHACHT, M.D.

Plaintiff,

v.

DENIS R. MCDONOUGH, Secretary, U.S. Department of Veterans Affairs,

Defendant.

---

**Plaintiff's Response to Defendant's Motion for Summary Judgement (ECF No. 143)**

---

As a federal employee of the Department of Veterans Affairs ("VA"), Dr. Schacht had the right to due process and to pursue her legal claims through several avenues of redress. She is female, was born in Colombia, and was disabled due to pregnancy complications. The VA removed her from her position as an Anesthesiologist despite the fact she never had a negative patient outcome or history of discipline. The VA retained her male peers, all born in the United States and not disabled, despite their history of performance issues and egregious misconduct.

Dr. Schacht exercised her due process rights when she appealed her termination to a VA Disciplinary Appeals Board ("DAB") and sought judicial review in the District of Columbia courts ("DC courts"). *Doe v. Lieberman*, 2022 U.S. Dist. LEXIS 151655 (D.D.C. Aug. 10, 2022) ("*Doe I*"); *Schacht v. Lieberman*, 103 F.4th 794 (D.C. Cir. 2024) ("*Doe II*"). She exercised her right to pursue her discrimination and retaliation claims through the EEO Complaint process and at the EEOC. Once she exhausted her administrative requirements, she elected to file this civil action. Because she worked for the VA, Dr. Schacht was not required to file all of her legal

claims in one proceeding or venue, nor could she, as the DAB did not have jurisdiction over her discrimination claims and the EEOC did not have jurisdiction over her due process claims.

**Responses to Defendant's Statement of Undisputed Material Facts**

**1-8.** Admit.

**9.** Admit Oliva was the residency program director in 2017. Deny remainder as Oliva said he consulted with others. Ex. H, Oliva Depo, 7:14-17; 8:18-9:21; 35:22-36:13.

**10-12.** Admit Houser-Hanfelder, who is not a doctor, expressed her opinions at the deposition.

**13.** Admit Mangione expressed her opinion at the deposition.

**14-20.** Admit, although Ex. J does not contain pages referenced.

**21.** Admit Dr. Schacht met with Dr. Gurdev Rai in October 2016 and deny remainder. She did not recall specifics but recalled there were a lot of issues in the ICU and there were complaints about her and a lot of different physicians in the ICU. Ex. J, 221:14-222:20.

**22.** Admit Mangione said she believed that in 2016 Rai "mentioned ... some challenges with Dr. Schacht." Deny remainder. Ex. C, 42:17-24.

**23.** Admit.

**24.** Deny. Ex. J does not contain the pages referenced. Admit Depo Ex. 16 purports to reflect Schacht's residents' scores but denies the remainder as they are not facts, but counsel's interpretation of the numbers reflected therein.

**25.** Deny. Ex. J does not contain the pages referenced. Plaintiff admits Depo Ex. 16 contains comments from residents. Ex. J at Depo Exhibit 16.

**26.** Deny in part. Dillon said concerns about CRNA Adema started to surface in March or April and he learned some people also had concerns with Dr. Schacht. Ex. E, 119:24-120:24. Ex. 18 (Dillon 2019 deposition), 121:3-11.

**27.** Deny. Schacht said she didn't recall receiving, reading the email or speaking with Rai about complaints. Ex. J, 231:21-232:12. In May 2017, a month earlier Rai, completed her Evaluation form reflecting she met every performance factor. Exhibit 3 - Schacht FPPE May 2017

**28.** Admit.

**29.** Admit in part, deny in part. Admit in the fall of 2018, Oliva solicited complaints from some number of residents which included the comments referenced. Plaintiff disputes Oliva solicited information from 48 residents. She worked with a maximum of 15 residents between May 2016-October 2017. Ex.1 - Schacht Declaration, ¶ 23. Oliva said he knew about anonymous complaints from only four residents and had no explanation for why there were more residents referenced in the letter. Exhibit 19 - Oliva DAB Testimony, 386:3-21.

**30.** Admit that during his deposition, Oliva offered his opinion that it was a surprising number.

**31.** Deny. Ex. H does not contain the referenced pages.

**32-33.** Admit.

**34.** Admit Black said he received complaints from residents and "a host of people." He also admits it is common for residents to complain about physicians and, in total, he only received one or two verbal complaints about Schacht. Ex. 20 - Black Deposition 102:11-13; 103:22-24.

**35.** Admit Black solicited complaints about Schacht and offered to pay overtime to put them in writing. Exhibit 21 - Cordova Deposition, 121:6-125:10. Ex. G doesn't support the proffer.

**36.** Admit Black expressed his opinion during his deposition.

**37-40.** Admit.

**41.** Admit Black expressed his opinion during his deposition.

**42.** Admit Mangione expressed her opinion during her deposition.

**43.** Deny. The fact-finding investigation Black conducted did not start until after February 14, 2018, the day Schacht filed her EEO Complaint and the same day the VA summarily suspended her privileges. Ex. 17 - 02.23.2018 Black Email.

**44-46.** Admit.

**47.** Admit. Schacht also sent the email to Mangione, who took no corrective action to address Barnett's behavior. Exhibit 22 - 12.21.2017 Schacht Email to Black and Mangione.

**48-52.** Admit. The reasonable accommodation request signed by her doctor also asked the VA to limit her exposure to radiation during her pregnancy. Ex. F at Depo Ex. 22-004.

**53-55.** Deny. Black was the deciding official for Schacht's accommodation request. He partly granted the request after she was suspended. He denied her request for additional time to participate in the investigation. Ex. - Accommodation Request Form 04.18.2018.

**56.** Admit in part. Black drafted a Letter of Counseling but changed his plan after Schacht filed a formal EEO complaint. Ex. 23 - Draft Counseling Letter. Deny remainder.

**57.** Admit Black expressed his opinion during his deposition.

**58.** Admit Black received complaints after he solicited them and deny remaining allegations. Ex. 21 - Cordova Depo., 121:6-15; Ex. 24 - Egan Depo., 73:25- 75:17.

**59-60.** Admit Black recommended that Schacht's privileges be suspended and expressed his opinions during his deposition.

**61.** Admit Mangione expressed her opinion at the deposition.

**62-65.** Admit.

**66.** Deny. Houser-Hanfelder was notified about Schacht's EEO complaint on January 26, 2018. Ex. 25 - EEO Counselor Report, p. 1. EEO Mgr. Peterson sent an email on January 29, 2018 to

Black and Shockey. Ex. 26 - 01.29.2018 Email. They communicated about her EEO complaint. Ex. 27 - 02.15.2018 Black Email.

**67.** Admit.

**68.** Admit Black began a fact-finding alone after two other physicians raised concerns that having him involved could be prejudicial to Schacht. Ex. 17 - 02.23.2018 Black Email.

**69.** Admit VA fact-finding investigations are subject to oversight by the HR Department and per VA Handbook Policy 0700, fact finders should have no involvement or pre-existing personal knowledge about the allegations. Exhibit 28 - VA Policy 0700, p 28. Deny remainder.

**70-72.** Admit.

**73.** Admit that the fact-finding would remain open until Schacht gave birth but deny that the entire investigation was stayed. Ex. - Accommodation Request Decision 04.18.2018.

**74-78.** Admit.

**79.** Admit Black misrepresented that Schacht had been placed on an FPPE for cause and deny remaining allegations. Ex. - PSC Minutes 07.23.2018.

**80-81.** Admit.

**82.** Deny. The incidents referenced did not pose a safety threat to patients nor did any patient suffer harm. Ex. 1 - Schacht Declaration, ¶ 26.

**83 – 85.** Admit Mangione expressed these opinions.

**86-87.** Admit.

**88.** Admit Houser-Hanfelder expressed this opinion during her deposition.

**89.** Admit Houser-Hanfelder claimed she reviewed Mangione's Douglas Factors analysis and that she claimed to have conducted her own independent analysis.

**90.** Admit Houser-Hanfelder expressed this opinion during her deposition.

**91.** Admit Houser-Hanfelder expressed this opinion during her deposition. However, Moore said if no FPPE for cause had been issued, then he would have wanted to consider that fact before making the decision at the PSC. Ex. 30 - Dr. John Moore Deposition, 87:20-88:3; 90:21-91:15.

**92.** Admit Houser-Hanfelder expressed this opinion during her deposition.

**93-94.** Admit.

**95.** Admit in part. The DAB heard testimony from various witnesses, including Plaintiff, but Schacht's attorney was not allowed to present any evidence of discrimination or other evidence that contradicted witness testimony. Ex. J, 66:1-18.

**96-99.** Admit.

**100.** Admit the DAB Decision states it applied the Douglas Factors and made the findings listed but deny the Douglas Factors were applied appropriately.

**101.** Admit the DAB Decision contains the statement referenced.

**102.** Admit that Schacht was not issued an FPPE for Cause.

**103-104.** Admit.

**105-107.** Admit the statements referenced are contained in the D.D.C. opinion. The D.D.C. did not conduct an evidentiary hearing or make any "independent findings of fact."

**108.** Admit Plaintiff attempted to argue the DAB failed to consider motivation and that she was removed in retaliation for her request for a reasonable accommodation.

**109-110.** Admit the statements referenced are contained in the D.D.C. opinion.

**111.** The D.D.C. stated that the DAB did not fail to account for any alleged improper motivation when it independently reviewed the Agency decision. However, the D.D.C. also stated that "the agency's motivation in bringing charges against Doe is not the relevant question in this case." *Doe I*, 2022 WL 3576211, at *11.

**112-113.** Admit the statements referenced are contained in the D.D.C. opinion.

**114.** Admit that Plaintiff appealed to the D.C. Circuit which upheld the D.D.C.'s decision.

**115.** Admit the D.C. Circuit upheld the D.D.C.'s opinion.

**116-117.** Plaintiff admits she is not aware of any discriminatory remarks being made to her or about her by Black, Mangione, Dillon or Houser-Hanfelder.

**Plaintiff's Statement of Additional Disputed Material Facts ("PMF")**

**1**. Plaintiff was employed as a VA anesthesiologist between March 2015 and August 20, 2018. She is Colombian, the only female and only Latina anesthesiologist. To Dr. Schacht's knowledge, all of the male anesthesiologists and male SICU physicians at the VA with whom she worked were born in the USA. Exhibit 1 - Declaration of Dr. Elizabeth Schacht, ¶ 3.

**2**. Dr. Schacht was licensed in 2010. She is board certified in Anesthesiology, Critical Care medicine and Advanced Perioperative Transesophageal Echocardiography. Exhibit 1, ¶ 2.

**3.** Plaintiff has no malpractice claims or adverse patient outcomes. She has never been sanctioned by a state licensing board or had a patient complaint substantiated. Ex. 1, ¶ 27.

**4.** During her tenure at the VA, Dr. Schacht provided anesthesia services in the Surgery Department, the Cardiac Care Team and the Surgical Intensive Care Unit ("SICU"). Ex. 1, ¶ 3.

**5.** Plaintiff's chain of command (supervisors) were: Sallie Houser-Hanfelder, Medical Center Director; Dr. Ellen Mangione, Chief of Staff; Dr. Harold Dillon, Deputy Chief of Staff; and the Chief of Anesthesiology, Dr. Black, Drs. Rai and Shockey. Exhibit 1, ¶ 4.

**6**. From the start of her employment through the date that she was removed Plaintiff was treated less favorably than her male peers in the terms and conditions of her employment. Exhibit 1, ¶ 6.

**7.** Dr. Schacht was never given any verbal or written warnings, a letter of counseling or letter of expectations nor was she ever placed on a FPPE for cause. Exhibit 1, ¶ 13.

**8.** Despite a good performance evaluation, Dr. Schacht's former supervisor, Dr. Gurdev Rai, kept her on a Focused Professional Practice Evaluation ("FPPE") which is only used for new employees. Ex. 1, ¶ 8; Ex. 2 - 11.06.2016 Letter re Name Change.

**9.** When Dr. Schacht inquired why Rai was keeping her on a FPPE, she was told that it was because she got married and changed her name. Exhibit 1, ¶ 9.

**10**. Rai told Dr. Schacht that medical staff is likely "not used to people like you, you Latin women are so passionate they think that you're mad at them." Exhibit 1, ¶ 15.

**11.** Dr. Schacht's national origin was referenced during interactions with her male colleagues who often referred to her as being a typical "hot headed temperamental Latina." Ex. 1, ¶ 15.

**12**. Dr. Schacht's colleagues in the SICU, including her male SICU Director, Dr. Wayne Soong, referred to her as "the Chihuahua" and made "Chihuahua sounds" in refence to her. Exhibit 1, ¶ 16; Ex. 9 - Janet Dinnen Depo., 8:14-10:7.

**13.** In the summer and fall of 2017, the Anesthesia Department was in turmoil over short staffing in Anesthesia, cancelled surgeries and a hostile work environment. Ex. 1, ¶ 19; Ex. 10 - Mangione Deposition, 92:23-93:10; Ex. 46 - 08.22.17 Memo to Anesthesiology staff.

**15.** During the fall of 2017, there had also been a fact-finding investigation regarding a hostile work environment in the Anesthesia Department and the SICU. Ex. 1, ¶ 21.

**16.** On August 4, 2017, Dr. Schacht sent an email to Dr. Todorovic at C.U. to set up a meeting to discuss the ongoing situation at the VA. Ex. 5 - Schacht Email dated August 4, 2017.

**17.** Dr. Schacht met with Todorovic on August 15, 2017 and discussed the ongoing staffing crisis at the VA and its impact on residents. Exhibit 1, ¶ 22.

**18.** Sometime after the August meeting, Todorovic and Oliva collected information regarding Dr. Schacht's interactions with residents. Def. Exhibit H, 45:24-46:24.

**19.** On January 8, 2018, Black sent a letter suspending her supervision of residents. Exhibit 11.

**20.** Mangione admits Dr. Schacht should have been notified that the Agency was conducting a FCCR and had no explanation for why she was not. Ex. 10 - Mangione Deposition, 85:16- 87:14

**21.** In 2017, management initiated a Focused Clinical Care Review (FCCR) into her privileges. The VA used three doctors from other VA facilities to review thirty of her cases. The reviewers concluded Dr. Schacht met the standard of care. Ex. 12 - 10.26.2017 Email; Ex. 13 - Outside Reviewer Reports.

**22.** Mangione conceded that because there were no findings of substandard care by Dr. Schacht, the FCCR could not be used to terminate her. Ex. 10 - Mangione Deposition, 90:2-91:3.

**23.** On December 21, 2017, Dr. Schacht sent an email to Black and Mangione regarding the substandard clinical practices and unprofessional conduct of Dr. Carlton Barnett. Ex. 14 - 12.21.2017 Email from Dr. Schacht to Dr. Black and Dr. Mangione.

**24.** Dr. Schacht initiated a second EEO Complaint on December 22, 2017 alleging sex and national origin discrimination. Ex. 15 - 12.22.2017 Informal EEO Complaint.

**25.** On January 9, 2018, Dr. Schacht disclosed to Black that she was pregnant and requested accommodations relating to her pregnancy. Ex. 6 - 01.09.2018 Email with RA letter.

**26.** Despite Dr. Schacht's accommodation requests, she continued to be assigned to cases involving radiation and requiring a heavy weighted apron. Exhibit 1, ¶ 22 - Schacht Declaration.

**27.** In January and February, 2018, Black considered issuing a letter of counseling to Dr. Schacht regarding complaints he received. Ex. 16 - Proposed Letter of Counseling.

**28.** After Black learned of Dr. Schacht's EEO Complaint and her Request for Accommodation, he decided to conduct a fact-finding investigation of Dr. Schacht by himself, even though the

other proposed investigators were concerned about his involvement as her supervisor. Ex. 17 - Black Email dated 02.23.2018.

**29.** Mangione admits it is important for investigators conducting a fact-finding investigation to be impartial and unbiased. Ex. 10 - Mangione Deposition, 130:4-7.

**30.** CRNA Brenda Cordova testified that Black solicited complaints and interrupted cases with patients to relieve the CRNAs so they could write a complaint about Dr. Schacht. Ex. 21 - Cordova Depo., 121:6 -125:10. CRNA Jennifer Egan said Black's solicitation of complaints about Dr. Schacht made her very uncomfortable. Ex. 24 – Egan Depo., 73:21-76:21.

**31**. Black did not prepare a fact-finding report after his investigation. He did not receive formal training on how to conduct a fact finding. Ex. 20 - Black Deposition, 100:10-18; 237:15-21.

**32.** In or around February 2018, Black recommended suspension of Dr. Schacht's privileges. Ex. 20 - Black Deposition, 99:4-8.

**33.** There were no significant adverse clinical effects in any of the reports Black received while preparing to suspend Dr. Schacht's privileges. Ex. 20 - Black Deposition, 107:24-108:5.

**34.** Dr. Schacht filed her formal EEO Complaint on February 14, 2018 and received notice her privileges were suspended that same day. Ex. 31 - Formal EEO Complaint.

**35.** On March 5, 2018, Dr. Schacht contacted the EEO Office to report her concerns that she was being subjected to retaliation. Ex. 32 - 03.05.2018 Email Schacht to EEO.

**36.** On March 14, 2018, Dr. Schacht requested accommodation (FMLA leave) so she could remain on bed rest. At the same time, she requested that the investigation be stayed until after she had time to recover from childbirth. Ex. 1, ¶ 24 - Schacht Declaration.

**37.** Black partially granted the request on April 18, 2018, after she had already been suspended. He denied her request for additional time after childbirth to participate in the investigation. Exhibit 8 - Accommodation Request Decision 04.18.2018.

**38.** Dr. Schacht could not remain on bed rest because she had to travel to the hospital to secure letters of support and submit documentation. Ex. 1, ¶ 25 - Schacht Declaration.

**40.** On March 15, 2018, after her suspension, Dr. Schacht was given her October 2017 proficiency report which rated her as low satisfactory. Ex. 1, ¶14 - Schacht Declaration.

**41.** On July 23, 2018, the Professional Standards Council (PSC) met to consider revocation of Dr. Schacht's medical privileges. Black presented the proposal to revoke and Dr. John Moore seconded the motion to revoke. Ex. 29 - Minutes of July 23, 2018 PSC Meeting.

**42.** Moore said Black did not present evidence of the FCCR to the PSC and that Black said Dr. Schacht had been on an FPPE for cause. He said if that was not true, the PSC had inadequate evidence to revoke Dr. Schacht's privileges. Ex. 30 - Moore Depo., 87:20-88:3, 90:21-91:15.

**43.** A primary comparator is Dr. Douglas Semian, whom Dr. Schacht worked with in the SICU. He is a male of US origin, subject to the same performance and conduct standards, has no known disabilities or EEO complaints. Ex. 1, ¶ 5 - Schacht Declaration.

**44.** Multiple complaints about Semian were sent to the Chiefs of Anesthesiology including Rai, Shockey and Black. On August 16, 2016, the SICU staff complained about their inability to communicate with him. Ex. 33 – 08.16.2016 Dancho Email. Answer, ECF No. 75, ¶ ¶ 101-102.

**45.** On September 6, 2017, there were multiple reports of Semian's altercation with another member of the Critical Care team in front of a patient's family. The incident was so serious it required police intervention. Ex. 34 - 09.07.2017 Piersky Email; Answer, ECF No. 75, ¶ 102.

**46.** On September 29, 2017, Semian was reported again for hostile behavior and concerns for

patient care. Ex. 47 – 09.29.2017 Feedar email.

**47.** In December 2017 and January 2018, two separate Patient Safety Reports were made to Black regarding Semian. Ex. 35 - 12.29.2017 Parkinson Email; Ex. 36 - 01.14.2018 Parkinson Email; Answer, ECF No. 75, ¶ ¶ 103-104.

**48.** Black proposed a 3-day suspension on January 17, 2018. Houser-Hanfelder sustained it. He gave Semian a memo outlining how he needed to improve his communication practices. Ex. 37 - 01.17.2018 Letter to Semian; Ex. 38 - 01.22.2018 Memorandum; Answer, ECF No. 75, ¶ 106.

**49.** Mangione admits it is important for management proposing discipline to compare the type of disciplinary action being proposed to other discipline issued to make sure that there is consistency. Ex. 10 - Mangione Deposition, 113:4 – 114:2.

**50.** On May 31, 2018, another complaint was made regarding concerns with Semian's communication. Ex. 39 - 05.31.2018 Parkinson Email; Answer, ECF No. 75, ¶ 107.

**51.** On October 21, 2018, another complaint was filed against Semian alleging that he was hostile, engaged in misconduct and unsafe behavior. Ex. 40 - 10.21.2018 Parkinson Email.

**52.** On October 26, 2018, another complaint was filed about ongoing issues with Semian. Ex. 41 - 10.26.2018 Parkinson Email; Answer, ECF No. 75, ¶ 112.

**53.** The VA took no further action against Semian until it suspended his privileges on February 15, 2019 (an action the VA took again on March 19, 2020). Answer, ECF No. 75, ¶ 113.

**54.** Semian was reported again on September 24, 2019 for hostile behavior, communication issues and refusing to meet with a patient. A factfinding report concluded he was continuing to create an unsafe working environment. Ex. 48 – 12.02.2019 Moore Fact Finding Report.

**55.** Semian was ultimately allowed to resign after he was informed by his supervisor Dr. John Moore that he was prepared to issue an adverse OPPE. Ex. 30 - Moore Deposition, 15:8-16:23.

**56.** A primary comparator is Dr. Christoper Frandrup, whom Dr. Schacht worked with in the SICU. He is a male of US origin, subject to the same performance and conduct standards, has no known disabilities or EEO complaints. Ex. 1, ¶ 5 - Schacht Declaration.

**57.** Like Dr. Schacht, the VA removed Frandrup in September 2017 for "Unprofessional Conduct." The VA alleged that while on call duty, Frandrup reported to an emergency surgery late and an in impaired state (alcohol). Ex. 42 - 03.16.2018 Frandrup Removal Documents.

**58.** Unlike Dr. Schacht, the VA reinstated Frandrup to his full-time position at the VA ECHCS on March 16, 2018. Ex. 42 – Frandrup Removal and Reinstatement.

**59.** Dillon, Black and Mangione knew discipline imposed on Frandrup was relevant to Dr. Schacht's case. Ex. 43 - 03.18.2018 Dillon Email.

**60.** Mangione's Aggravating and Mitigating Factors Form does not reference Semian or Frandrup even though they knew Frandrup was a comparator Ex. 10 - Mangione Depo., 149:10-150:24; Ex. 44 - 07.31.18 Memo re Proposed Removal.

**61.** In October 2018, Frandrup destroyed an anesthesia cart at the Hospital. The police investigated but Black defended Frandrup and no action was taken. Ex. 45 - Tracy Spence Deposition, 10:9 – 13:8. Frandrup was charged in federal court. He was fined, agreed to one year of unsupervised probation and received a deferred prosecution. Ex. 49 – Frandrup Stipulation.

**62.** Dr. Schacht's supervisors knew about the EEO complaints. Ex. 25- EEO Complaint. Ex. 50 – January 29, 2018 Email to Black.

**63.** When the VA fired Dr. Schacht, it informed her she had the right to file with both the DAB and the EEOC (ORM). Ex. 51 – Removal Letter. Throughout the DAB process and before the DC courts, the VA maintained that DABs do not have jurisdiction over discrimination claims. Ex. 52 – DAB Response Letter; Ex. 53 – D.C. Cir. Brief.

## ARGUMENT

**I. The VBA does not preclude Plaintiff's employment discrimination claims.**

**A. The VBA is not the exclusive remedy for Dr. Schacht's discrimination claims.**

Congress created a comprehensive, bifurcated system for federal employees to pursue their due process and discrimination claims. Under the Civil Service Reform Act of 1978 ("CSRA"), most federal employees pursue their due process claims at the Merit Systems Protection Board ("MSPB") and their discrimination claims before the Equal Employment Opportunity Commission ("EEOC"). If an employee alleges the adverse action was based on discrimination, he has a "mixed case." EEOC and MSPB regulations work together to ensure that when a mixed case is initially processed in both forums, the claims will be combined for one administrative hearing, one path for administrative appeal and, if the employee elects, one trial de novo in federal district court.[1]

**<u>Federal sector discrimination claims.</u>**

The VA argues one sentence in the Veteran's Benefits Act ("VBA"), 38 U.S.C. §§ 7461-7464 precludes Dr. Schacht's discrimination claims: "DAB's 'shall have *exclusive jurisdiction* to review any case. . ." ECF No. 143 (Motion for Summary Judgment, hereinafter "MSJ") at 16-17. The VA ignores 42 U.S.C. § 2000e-16(a), which states that "[a]ll personnel actions affecting employees . . . in executive agencies as defined in section 105 of title 5, United State Code . . . shall be made free from any discrimination based on race, religion, sex, or national origin." The Supreme Court has held that *this statute* "provides the exclusive judicial remedy for claims of discrimination in federal employment." *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 835 (1976).

[1] *See, e.g.*, 5 C.F.R. §7702 and 29 C.F.R. §1614.302.

The VA seems to argue that the VBA's exclusive jurisdiction language preempts §2000e-16. MSJ at 16-17. Nothing in the VBA states or implies that it nullifies the anti-discrimination statute. "It is a 'cardinal rule' that the repeal of a statute by implication is not favored." *Yellowfish v. Stillwater*, 691 F.2d 926, 928 (10th Cir. 1982). Further, the VA fails to cite any cases (and Plaintiff has not found any) holding that the VBA preempts 42 U.S.C. §2000e-16.

The VA acknowledges that 5 U.S.C § 2302 preserves the right of federal employees to pursue discrimination claims, but argues VA doctors do not have this right because the VBA does not include similar language. MSJ at 17. The VBA did not need to include such language because Congress amended the CSRA to ensure that "employees appointed under Chapter 73 or 74 of title 38 shall be employees" for purposes of various sections of the CSRA, including § 2302. 5 U.S.C. § 2105(f); *Harding v. VA*, 448 F.3d 1373, 1376 (Fed. Cir. 2006). By enacting 5 USCS § 2105(f), Congress intended to supersede all inconsistent provisions of 38 USCS chapters 73 and 74 for particular purposes. *Id.* 5 USCS § 2105(f) effectively overrides the exclusivity provision of 38 USCS § 7462. *Id.*

**<u>Federal sector due process claims.</u>**

The CSRA provides most executive branch employees with the right to pursue due process appeals related to serious adverse actions at the MSPB. In the VBA, Congress established a separate grievance process for §7401(a)(1) physicians. *Tompkins v. United States Dep't of Veterans Affairs*, 16 F.4th 733, 736 (10th Cir. 2021). If a physician is subjected to a major adverse action for reasons related to professional conduct or competence, §7462 affords him the right to a DAB hearing and judicial review.

The VA relies on one sentence in §7462, taken out of context, to argue the VBA precludes Dr. Schacht's discrimination claims. It asserts that pursuant to §7462, a DAB has "exclusive

jurisdiction to review any [and, it argues, every] case" involving a §7401 physician. MSJ at 5. When read in context with the remainder of the VBA, however, the language obviously refers to the first step in the VA's administrative grievance process – not the process that applies to any other type of claim arising out of an adverse action. In other words, the "exclusive jurisdiction" language makes clear that a §7401(1) doctor who wants to pursue an administrative appeal of a covered adverse action must first present that appeal to a DAB, not the MSPB.

It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme. *Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 666 (2007). When §2000e-16 is read together with the VBA, it is manifest that a §7401 physician's due process claims must be processed separately from her discrimination claims. And, intentionally or not, there is no structural provision like the mixed case processes at the MSPB and the EEOC that allows or requires a VA physician to elect between the two forums.

**The VA bifurcated Dr. Schacht's due process and discrimination claims.**[2]

The VA's argument that the VBA precludes discrimination claims conflicts with the facts that:1) it has historically bifurcated the hearing process in cases where a §7401 doctor has alleged both an adverse action appeal and a discrimination claim arising from the same action; and 2) it repeatedly instructed Dr. Schacht, and maintained before the courts, that her discrimination claims were separate from her due process claims. When the VA fired Dr. Schacht it said she had the right to appeal the decision to a DAB and also file a discrimination complaint. PMF 63. Throughout the DAB process and before the DC courts, the VA maintained that DABs do not have jurisdiction over discrimination claims. *Id.* As the VA argued to the Court of

[2] Plaintiff's references herein to her discrimination claims include her retaliation claims.

Appeals, "[t]he Board, composed entirely of physicians . . . had neither the authority nor the institutional competence to evaluate purported evidence of discrimination." *Id.* The DC courts accepted that the DAB did not have jurisdiction over the discrimination claims.[3] *Id.*

**<u>The cases the VA cites do not apply to the issues presented in this case</u>.**

The cases the VA relies upon to argue the VBA precludes discrimination claims are inapposite for two reasons. First, they involved §7463 disciplinary actions. The plaintiffs in these cases tried to invoke district court jurisdiction over their due process claims by relying on the APA, the constitution, or other statutes. The courts, reasoning Congress intentionally excluded §7463 disciplinary actions from the DAB process, ruled the VBA precluded them from bringing their due process claims to federal court. *Tompkins v. U.S. Dep't of Veterans Affairs*, 16 F. 4th 733 (10th Cir. 2021); *Hoover v. McDonough*, 2024 U.S. App. LEXIS 18179 (10th Cir. July 24, 2024). Second, unlike Dr. Schacht's case, none of the plaintiffs asserted statutory discrimination claims. The courts therefore did not have an independent basis to assert jurisdiction.

**B. Plaintiff was not required to opt out of the federal sector administrative process and pursue her discrimination claims in federal court.**

The parties agree that claim preclusion in this circuit requires: 1) a judgment on the merits in the earlier action; 2) identity of the parties; and 3) identity of the cause of action in both suits. The VA fails to mention, however, that a fourth factor is also necessary for claim preclusion to apply; the party resisting preclusion must have had a "full and fair opportunity" to

---

[3] One sentence in the DDC decision suggests the court believed the DAB considered the discrimination claims: "[t]he DAB thus did not fail to account for any allegedly improper motivation … ." *Doe I*, 37-38. Context shows it was dictum as the court had already explained (twice) that the DAB proceedings *did not* include the discrimination claims, it had reiterated the DAB's statements denying jurisdiction (*id*. *9-10) and it had declared "the agency's motivation in bringing charges against [Dr. Schacht] is not the relevant question in this case." *Id.* at *37.

litigate the claim in the prior suit. *Watkins v. Genesh*, 135 F.4th 1224, 1230 (10th Cir. 2025).[4] Because claim preclusion is an affirmative defense, the proponent bears the burden to show not only that the three preclusion factors are satisfied, but also that the "full and fair opportunity" exception is unavailing. *Id.; Nwosun v. Gen. Mills Rest.*, 124 F.3d 1255, 1257 (10th Cir. 1997); *United States v. Osage Wind, LLC*, 871 F.3d 1078, 1087 (10th Cir. 2017).

**Dr. Schacht did not have a full and fair opportunity to litigate her discrimination claims.**

The VA did not address the fourth requirement for claim preclusion, let alone carry its burden to prove Dr. Schacht had such an opportunity. For this reason alone, claim preclusion should not apply. *Osage Wind*, 871 F.3d at 1087. Even if the VA had addressed the fourth requirement, the facts of this case show Dr. Schacht did not have a full and fair opportunity to litigate her claims at the DAB or in the D.C. courts.

This circuit evaluates the fairness of the prior proceeding "by examining any procedural limitations, the party's incentive to fully litigate the claim, and whether effective litigation was limited by the nature of the relationship of the parties." *Watkins*, 135 F.4th at 1230. These factors warrant denying claim preclusion here. Procedural limitations in the DAB process – lack of jurisdiction -- prevented Dr. Schacht from litigating her discrimination claims. She had no incentive to litigate them because: 1) the DAB was not qualified to decide such claims (PMF 63); 2) the DAB does not allow discovery, but the EEOC does; 3) leaving her claims at the EEOC meant she would receive a hearing from a neutral third party; 4) it gave her additional

[4] In some cases, the "full and fair opportunity" requirement is described as an element of res judicata. In others its absence is described as an exception to doctrine. The Tenth Circuit has said the distinction is immaterial to the ultimate question, whether the party opposing res judicata had such an opportunity. *Id.*

opportunity to resolve the case without incurring the expense of a civil action; and 5) she would still have the opportunity to file in court.

The Tenth Circuit also follows the *Restatement (Second) of Judgments* when considering claim preclusion issues. *Watkins*, 135 F.4th at 1239; *Grays v. Granicus*, 2019 U.S. Dist. LEXIS 66196. The *Restatement* at § 26 addresses exceptions to the general rule concerning splitting of claims, and provides that under the following circumstances claim preclusion does not apply:

> (a) The parties have agreed in terms or in effect that the plaintiff may split his claim, or the defendant has acquiesced therein; or . . .
>
> (c) The plaintiff was unable to rely on a certain theory of the case or to seek a certain remedy or form of relief in the first action because of the limitations on the subject matter jurisdiction of the courts . . . and the plaintiff desires in the second action to rely on that theory or to seek that remedy or form of relief; or . . .
>
> (d) The judgment in the first action was plainly inconsistent with the fair and equitable implementation of a statutory . . . scheme . . ..

The exceptions apply here. The VA's bifurcated processing of due process and discrimination claims effectively constitutes an agreement that Dr. Schacht could (and was actually required) to split her claims. The VA acquiesced in splitting the claims as demonstrated by its bifurcated processing. PMF 63. While the VA informed all three forums that Dr. Schacht was separately and simultaneously pursuing her discrimination claims at the EEOC – it never -- until this case, argued she had to add her discrimination claims to her due process claims. *See generally*, *Doe I*, *Doe II*. Because she was not allowed to argue her discrimination claim, the DAB decision and the courts' affirmation of the same was clearly inconsistent with Dr. Schacht's right to pursue her statutory discrimination claims pursuant to 42 U.S.C. §2000e-16.

The VA argues that Dr. Schacht should have added her discrimination claims to the D.D.C. case. MSJ at 17. However, unlike her private sector counterparts, Dr. Schacht's status as a federal employee means she was entitled to exhaust a comprehensive administrative hearing

process before deciding whether to take her case to federal court. *See generally,* 29 C.F.R. §§1614.108(a) - 1614.110(a). The process includes a full investigation and a copy of the report. *Id.*, §§108(b), (c), (f). Pursuant to §§109(a), she was entitled to an evidentiary hearing before an EEOC administrative judge, and under §§109(d) she was entitled to conduct discovery before the hearing. She also had the right to file an appeal with the EEOC. *Id.* at §§110(b). Unlike her private sector counterparts, Dr. Schacht had a right to all these things *before* she filed a civil action. *Hopkins v. McDonough*, 2024 U.S. Dist. LEXIS 29377, *17 (N.D.Ill. Feb. 21, 2024).

**The cases the VA cites in support of its argument are irrelevant.**

Private sector employees do not have access to the EEOC's comprehensive hearing process. The VA relies on private sector cases to argue Dr. Schacht was obliged to add her discrimination claims to the D.D.C. case. MSJ at 17-18. Both *Wilkes v. Wyo. Dep't of Emp't Div. of Labor Standards,* 314 F.3d 501 (10th Cir. 2002) and *Watkins*, 135 F. 4th 1224 involved nonfederal employees who filed a claim with the EEOC and a complaint in district court. In finding claim preclusion applied, the Tenth Circuit said the employees could have combined their first and second cases by: 1) asking the EEOC to issue the letter and then amending the district court case to add the second complaint; or 2) requesting a stay in district court until the EEOC issued the letter, at which point they could return to district court and add the second complaint.

While Dr. Schacht technically could have done something similar, the first option would require her to forfeit her EEOC hearing rights and all attendant benefits. She also could have asked the D.D.C. to stay the judicial review proceedings while she exhausted the EEOC process and (assuming the court agreed to do so), upon its completion she could have added her discrimination complaint to the court case. There are several problems with that option. First, if she added the discrimination claims to the D.D.C. case, she would forfeit EEOC hearing rights

because the Commission would have terminated its processing of her case. 29 C.F.R. §1614.409. Second, the proper venue for her discrimination claims is this district, not the D.C. district. [5] Further, the D.D.C. case would have remained open for as long as it took the EEOC to complete the hearing process -- in this case that would have been at least four years.

**II. Issue preclusion.**

The VA argues that "[s]ome of the underlying issues Plaintiff seeks to litigate are precluded," but it does not identify what they are or what that means for this case. MSJ at 18. As the Court has explained, the only issue before the DAB and the D.C. courts was whether there was substantial evidence to support the specifications and, by extension, the VA's charge of unprofessional conduct. ECF No. 129. Because the DAB and the D.C. courts ruled the VA met the substantial evidence standard, that is the only issue precluded in this case. As the court explained in *Doe I*, the VA introduced enough evidence that a reasonable mind *might* accept as adequate to support the specifications and the unprofessional conduct charge. *Id.* at *35 (emphasis added). The DAB and the D.C. courts did not consider whether or to what extent discrimination played a role in the VA's decision, nor did they find by a preponderance of the evidence that she engaged in unprofessional conduct. Therefore, these issues are not precluded.

The practical effect of the DAB and the D.C. courts' decisions in this case is that they satisfy the VA's burden of articulating a legitimate business reason for its actions. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Anything more would be inequitable because the substantial evidence standard is lower than the preponderance of evidence standard. *Liebel v. Aetna Life Ins. Co.*, 595 Fed. Appx 755, 763 (10th Cir. 2104) (the substantial evidence standard

[5] Pursuant to 28 U.S.C. 1391(b)(2), the proper venue for the judicial review action was the D.D.C. Under 42 U.S.C. §2000e-5(f)(3), the proper venue for her discrimination claims is this district because the unlawful employment practices were committed in Colorado.

requires more than a scintilla of evidence, but less than a preponderance). Many courts have found that when the burden of proof on an issue in the first proceeding was less stringent than the burden of proof in the second proceeding, collateral estoppel does not apply. *See, e.g., Ioengine, LLC v. Paypal Holdings, Inc.*, 607 F. Supp. 3d 464, 488 (D. Del. 2022). The Supreme Court has recognized this principle. S*ee, e.g., One Lot Emerald Cut Stones & One Ring v. United States*, 409 U.S. 232, 235 (1972); *B&B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138 (2015).

**III. The VA is not entitled to summary judgment on the merits of Dr. Schacht's claims.**

**A. Dr. Schacht's Title VII discrimination claim.**

1. Dr. Schacht was subjected to adverse personnel actions.

The VA argues two of the acts she identified are not personnel actions. MSJ at 20. The argument for the first act (December 2017 incident with Barnett) is moot. Dr. Schacht described this incident as part of her hostile work environment claim, which the Court has already dismissed. ECF No. 71 at 20. The second act ("she was forced to participate in the investigation while on FMLA leave"), is not part of her Title VII claim. It is part of her Third and Fourth Claims for Relief (Disability Discrimination and Retaliation). ECF No. 29 at ¶¶ 180, 185.

2. The VA's disparate treatment of Dr. Schacht is evidence of discrimination.

A plaintiff can establish an inference of discrimination by showing her employer treated similarly situated employees outside her protected class more favorably. *EEOC v. PVNF, L.L.C.*, 487 F. 3d 790, 800-01 (10th Cir. 2007). The VA argues that there is no evidence Dr. Schacht was treated differently based on her sex (female), pregnancy, and/or national origin (Colombian). Motion, p. 21. As described at PMF 43-58, the record is replete with such evidence.

Employees are similarly situated when they report to the same supervisor, are subject to the same standards, and have engaged in conduct of comparable seriousness. *PVNF,* 487 F.3d at

801. Drs. Douglas Semian and Christopher Frandrup are proper comparators. PMF 43, 56. Dr. Semian engaged in far more egregious conduct than Dr. Schacht without having his privileges suspended or revoked, being placed on a non-clinical detail or removed. The VA received multiple, very serious complaints about him. PMF 44-54. Dr. Christopher Frandrup, like Dr. Schacht, was removed in September 2017 on an "Unprofessional Conduct" charge. PMF 57. The VA reinstated Dr. Frandrup, but he continued to engage in misconduct. PMF 58, 61.

At the summary judgment stage, a prima facie case together with evidence of pretext is sufficient to show discrimination and withstand summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000); *Randle v. City of Aurora*, 69 F.3d 441 (10th Cir. 1995). Showing disparate treatment—by demonstrating that the employer treated employees similarly situated to the plaintiff differently—is a particularly potent instrument to discredit an employer's allegedly legitimate reasons. *Kendrick v. Penske Transp. Servs.*, 220 F.3d 1220, 1230 (10th Cir. 2000); *Roberts v. International Business Machines Corp.*, 733 F.3d 1306, 1310 (10th Cir. 2013). The evidence regarding Drs. Semian and Frandrup satisfy the pretext requirement.

3. <u>The VA's "but for" causation argument</u>.

The VA seems to argue the DAB and D.C. courts' decisions "insulate" the VA's actions against any pretext argument. The VA cites only one district court case, from another jurisdiction, for this proposition, *Doran v. McDonald*, 2020 U.S. Dist. LEXIS 94060 (S.D. Ohio May 29, 2020).[6] Dr. Schacht identified relevant comparators and she has produced evidence that they engaged in similar or more egregious conduct without suffering the same consequences.

**B. The evidence supports Dr. Schacht's Title VII retaliation claim.**

[6] Dr. Doran conceded that the "numerous levels of review present more than an adequate record …" *Id.*, *31-32. She failed to identify comparators for her discrimination claim. *Id.*, *24-25.

The VA repeats the same arguments it made in the MSJ at 20-21. The arguments fail for the same reasons described above. Dr. Schacht engaged in protected activity when she filed her EEO complaint. ECF No. 37 (Motion to Dismiss) at 27. She filed her informal complaint on December 27, 2017, and the formal complaint on February 14, 2018. PMF 34. The Court found that her suspension and removal are materially adverse actions. ECF No. 71 at 28-29. The Agency asserts (in section III.A.1) that leave interference does not constitute a personnel action, but leave is a benefit of employment and the VA's definition of "personnel action" includes "a decision concerning pay, benefits or awards." *Id*. Further, the Tenth Circuit recognizes that preventing an employee from taking the full 12 weeks of leave guaranteed by the FMLA constitutes an adverse action. *See, e.g. Dalpiaz v. Carbon County*, 760 F.3d 1126, 1132 (10th Cir. 2014); *Campbell v. Gambro Healthcare, Inc.*, 478 F.3d 1282, 1287 (10th Cir. 2007).[7]

Dr. Schacht has shown that the managers responsible for taking the adverse actions knew of her protected activity. PMF 62. To show a causal connection she must "present evidence of circumstances that justify an inference of retaliatory motive." *Bekkem v. Wilkie*, 915 F.3d 1258, 1271 (10th Cir. 2019). Close proximity in time (one and one half months) may, by itself, support an inference of retaliation. *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001); *Conroy v. Vilsack*, 707 F. 3d 1163, 1181 (10th Cir. 2013).[8] The VA's February 14, 2018 decision to suspend her privileges and place her on a detail occurred within six weeks of her filing the informal complaint, and the VA took that adverse action the very same day she filed her

---

[7]Plaintiff disputes the VA's contention that she "has admitted that the VA did not compel her to participate." MSJ at 20-21. PMF 36-38.

[8] Relying on *Wise v. DeJoy*, 71 F.4th 744 (10th Cir. 2023) the VA argues "pretext can't rest on temporal proximity alone." MSJ at p. 23 n.9. *Wise* was decided in 2023 by one panel of the Tenth Circuit. Earlier cases (*Burrus*, *O'Neal*, *Conroy* and *Bekkem*) held to the contrary. "When faced with an intra-circuit conflict, a panel should follow earlier, settled precedent over a subsequent deviation therefrom." *Kendrick*, 220 F.3d at 1223 n.1.

formal complaint. These facts warrant an inference of retaliation. Even if proximity in time was not enough, Dr. Schacht is also entitled to an inference of retaliation because she shown that she was treated differently from other similarly situated, nonprotected employees.

**C. The evidence supports Plaintiff's disability discrimination claim.**

To prevail on her disability claim Dr. Schacht must show that she was: 1) disabled; 2) otherwise qualified for the job; and 3) suffered an adverse action because of the disability. The VA argues only the third element. As set forth above, the suspension, removal and interference in her FMLA leave are the adverse personnel actions. ECF No. 29, ¶ 66, 81-82.

Plaintiff agrees the VA's "mere awareness" of her disability is not enough to show the adverse actions were because of her disability. MSJ at 24. But Dr. Schacht showed more than mere awareness. The comparator evidence she has presented shows both pretext and that she is entitled to an inference of discrimination because she was treated differently from other similarly situated, nonprotected employees – none of whom had a disability.

**D. The evidence supports Dr. Schacht's Rehabilitation Act retaliation claim.**

Defendant argues Dr. Schacht cannot show she engaged in protected activity, suffered an adverse action, or a causal connection. MSJ at 25. Dr. Black was aware of her protected activity because she asked him for reasonable accommodations on January 9, 2018 (PMF 25), and FMLA leave on March 18, 2018. PMF 36. The proximity in time between her protected activity and the leave interference shows a causal connection.

WHEREFORE, Plaintiff respectfully requests that the Defendant's Second Motion for Summary Judgment (ECF No. 143) be denied.

Respectfully submitted this 10th day of March, 2026.

*s/Marisa L. Williams*
Williams & Rhodes LLC

7887 E. Belleview Ave. #1100
Englewood, CO 80111
303-220-0303
Mlw@williamsandrhodes.com

*s/Madeline A. Collison*
Benezra & Culver, P.C.
733 17th Street, Suite 1450
Denver, CO 80202
720-838-4632
Mcollison@bc-law.com

Attorneys for Plaintiff Dr. Schacht

**CERTIFICATE OF SERVICE**

I hereby certify that on this 10th day of March, 2026, I electronically filed the attached document using the CM/ECF system, which will send electronic notification of the filing to all counsel of record:

Jennifer R. Lake

Jennifer.lake@usdoj.gov

Attorney for Defendant

*s/Marisa Williams*